**EXQUISITE FORM BRASSIERE, INC.,**
a Corporation, Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 16123.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 26, 1961.

Decided Nov. 22, 1961.

Certiorari Denied May 21, 1962.
See 82 S.Ct. 1162.

Mr. Peyton Ford, Washington, D. C.
(Ford, Larson, Greene & Horan, Washington, D. C., of counsel), for petitioner.
Mr. David M. Phelan, Washington, D. C.,
also entered an appearance for petitioner.

Mr. James McI. Henderson, Gen. Counsel, Federal Trade Commission, with
whom Mr. Alan B. Hobbes, Asst. Gen.
Counsel, Federal Trade Commission, at
the time the brief was filed, was on the
brief, for respondent.

Before PRETTYMAN, BASTIAN and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review an order of the Federal Trade Commission. Petitioner, which we shall call "Exquisite", is engaged in the manufacture, sale and distribution of brassieres. It sells to department stores, women's specialty stores, and dress shops. In the course of its business it maintained a system of promotional allowances. The Commission found that in certain respects its practices in making these allowances were in violation of Section 2 of the Clayton Act as amended by the Robinson-Patman Act.[1] Subsections (d) and (e) of that Section are the pertinent provisions.

■■ Subsection (d) provides in essence that it shall be unlawful for a merchandiser to pay anything of value to a customer for any services or facilities furnished by the customer in connection with the resale of the product; unless such payment is available on proportionally equal terms to all competing customers.[2] This provision contemplates that the customer of a manufacturer may render services in connection with the resale of the product, such, for example, as advertising the product, and the manufacturer pays the bill or a portion of it. The statute says this practice is unlawful unless available to all competing customers. The other subsection (Subsection (e)) provides in essence that it shall be unlawful for a merchandiser to furnish any services or facilities connected with the resale of a commodity sold

by him, upon terms not accorded all purchasers on proportionally equal terms.[3] This section contemplates that a manufacturer may furnish free to his customers services, such as trained sales personnel, to facilitate resales. The statute provides that this practice is unlawful unless available to all customers on proportionally equal terms.

The difference between the two subsections is that in the former ((d)) the customer supplies the services or facilities and his vendor pays the bill, and in the latter ((e)) the wholesale vendor himself supplies the services and facilities for the use of his customer in facilitating resales.

The complaint against Exquisite, as originally filed before the Commission, charged a violation of Subsection (d) in the operation of a cooperative advertising plan. In this plan Exquisite offered allowances against future purchases for amounts spent by customers for advertising in which the name of an Exquisite product was prominently displayed. The minimum space to be devoted to this product in order to receive an allowance was specified. As an auxiliary plan, for those who did not wish to participate in the cooperative advertising plan, Exquisite operated a "premium plan". Coupons went with purchases in this plan, and the coupons were exchangeable for premiums in goods of various sorts. The charge was that Exquisite did not make these advertising allowances or premiums available to all competing customers up-

---

1. 49 Stat. 1526 (1936), 15 U.S.C.A. § 13.

2. The full text is: "It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally

equal terms to all other customers competing in the distribution of such products or commodities."

3. The full text is: "It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."

on proportionally equal terms. The examiner and the Commission found the charge proven.

The first point upon the appeal is that the conclusion of the Commission is not supported by substantial evidence on the record as a whole. Several witnesses testified they were owners, officers or employees of companies selling Exquisite products, and that their companies had not been offered these allowances; two of petitioner's officers testified to the same effect in respect to the practice. Exquisite says the practice was well known and was announced in trade journals. But the only references given us to the latter in the record are three publications of an announcement in February, 1956, that Exquisite would help customers defray production costs of co-operative advertising. It seems to us that the evidence presented by Exquisite was not sufficient to offset the clear content of that presented by the Commission staff. The conclusion reached by the Commission remains supported by substantial evidence on the record as a whole.

The second point made by Exquisite is posed by the following facts. During the course of the hearing on the complaint as originally filed, evidence was presented with reference to a practice of Exquisite in respect to "stylists". These were female employees who aided the personnel of retail merchants in displaying, fitting and selling Exquisite products. These "stylists" were paid by Exquisite and worked at the retail places of business upon assignment. When this evidence appeared, counsel supporting the complaint announced that he might move for amendment of the complaint. When he completed his case on the charge as originally posed and before any defense had been begun, he did move to amend and the motion was granted. A second count was thus added to the complaint. It charged that Exquisite had violated Subsection (e) of the statute in furnishing to some purchasers the services of "stylists" without offering the same services on proportionally equal terms to competing purchasers.

Exquisite asserts error in the granting of the motion to amend. We find none. Ample time was given for preparation of a defense, thirty days being given for answer and almost another ninety days before hearing. Full hearing was held. Amendments to conform pleadings to proof are commonplace in judicial proceedings, and the action here, in an adjudicatory, or quasi-judicial, proceeding, was of that general character. All procedural safeguards were afforded in ample measure; were this not so, a remand might be in order.

Next, Exquisite contends the allegations of the second count (i.e., the addendum by amendment), concerning the furnishing of "stylists", were not substantiated by the record as a whole. The point involves, in part, a problem of credibility. We must leave that to the examiner and the Commission. There is substantial support for the view they took. An official of Exquisite testified at one stage quite clearly that the five or six stylists were allocated on an equal time basis among the ten or twelve districts, into which the Company had divided the country, and were used by the district managers for promotional purposes as they saw fit. This official testified quite differently later on. We think the Commission's finding is sufficiently supported. The same observation applies to the defense proffered by Exquisite to the effect that the stylists were used only to meet competition.

The point of general interest upon this appeal is whether a defense of meeting competition in good faith, described in the proviso in Subsection (b) of the statute, is available in response to a charge of violating Subsection (d). All parties seem to agree that the defense thus described is available in response to charges under Subsections (a) and (e). Is it available to a person charged under Subsection (d)? Such a defense was offered and received in respect to the Subsection (e) count, Count

II of the complaint, but when proffered on Count I, the Subsection (d) count, it was rejected. The parties agree that no court has yet passed directly on this question.

The full text of Subsection (b) is in the margin.[4] The critical words used in the proviso are "the furnishing of services or facilities to any purchaser". These are the words which appear in Subsection (e). The words in Subsection (d) are "to pay * * * to * * a customer * * * *as compensation* * * * for any services or facilities *furnished by* * * * such customer". (Emphasis added.) While "services or facilities" are the subject of both subsections, in the one case ((e)) the vendor furnishes them *to* the customer; in the other they are furnished *by* the customer and the vendor reimburses him. So that, if careful note is taken of the difference between Subsections (d) and (e), and if Subsection (b) is read quite literally, the language of the statute appears to support the view of the Commission. That is, read thus the statute says that a person can meet competition by directly supplying some but not all customers with services and facilities with which to promote sales, but he cannot meet competition by reimbursing some but not all of his customers for services or facilities they procure in the first place. We think this is an unrealistic reading of the statute.

We first note the substance of the subject matter of this statute. The economic evil sought to be outlawed by it is the same whether the services and facilities are furnished to the customer or by the customer with reimbursement, so long as discrimination is practiced. Congress was here dealing with a fundamental economic concept; it was not shadowboxing or indulging in fine semantic shadings. It is impossible to believe it meant to treat one process of discrimination one way and to treat in another way another process equally effective as discrimination. The substance of the problem dealt with by this statute precludes such a construction in the absence of unmistakable evidence to that effect.

Indeed, as the Eighth Circuit pointed out in the Elizabeth Arden case,[5] a seller who makes discriminatory payments of compensation to a customer for demonstrator services provided by the customer's employee might be regarded alternatively as having violated Subsection (e) "by contributing to the furnishing of, any services or facilities", *or*, as having violated Subsection (d) by making discriminatory payments of compensation for services or facilities furnished by the customer. It is not necessary to do so, but Subsection (e) might well be viewed as an extra precautionary measure inserted by the Congress to make sure its basic purposes were not narrowly construed. The thrust of the Robinson-Patman Act is against discrimination.

We now examine the language of the statute. Subsections (a) and (e) proscribe, in words, discriminations; "[i]t shall be unlawful * * * to discriminate". The word "discriminate" does not appear in Subsection (d), but discrimination is the action declared unlawful in that subsection just as clearly as if the word had been used. That Subsection ((d)) declares it to be unlawful to

4. "(b) Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however*, That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

5. Elizabeth Arden Sales Corporation v. Gus Blass Co., 8 Cir., 150 F.2d 988, cert. denied, 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467 (1945).

compensate a customer for services or facilities furnished by him, "unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities." If the compensation is available to all competing customers upon proportionally equal terms, there is no violation of this law no matter how much such compensation is paid. The discrimination makes the illegality. The Commission makes the flat statement in its brief here that Subsection (d) does not proscribe discriminations in services or facilities. We are wholly unable to agree with that view.

Subsection (b) is a procedural provision. Its chief clause begins, "Upon proof being made * * * that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged * * *." The language of this basic clause is "services or facilities furnished"; it does not say either "to" or "by". There can be no quibble about the reality that services or facilities are furnished by a vendor whether they are supplied in kind or are acquired by the customer with subsequent reimbursement by the vendor. Neither can there be any quibble about the reality of a discrimination in either event. Whatever the dispute may be about semantics, the realities are crystal-clear. Obviously, it seems to us, this basic clause, as a matter of reality and without semantic difficulty, includes discrimination in the furnishing of services or facilities no matter how furnished. Surely it was not intended by this section to shift the burden when proof is made that services and facilities have been furnished directly to some customers only, but not if they have been furnished indirectly.

Then the clause proceeds; when such proof has been made, the person charged may show "justification", and the justification thus shown is for the purpose of "rebutting the prima-facie case thus made". If the prima-facie case may involve either direct or indirect furnishing, the rebuttal justification obviously may be of either. So it seems clear to us that the basic clause in (b) means that justification can be shown in response to proof of either a direct or an indirect discrimination in furnishing services or facilities.

We come, then, to the proviso. It begins with a reference to "the prima-facie case thus made". This, as our discussion above concludes, means discrimination by either direct or indirect furnishing of services or facilities. It refers to the seller's "rebutting" the prima-facie case thus made. Then comes the phrase which is the nub of the controversy. The proviso says that the seller's rebuttal can be made by showing that "the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet * * * the services or facilities furnished by a competitor." The Commission says the phrase "to any purchaser" means furnishing in kind; it does not include furnishing by reimbursement to a customer for services or facilities initially supplied by him. Support for that view is found in the fact, as we have pointed out, that a dichotomy is indicated by the difference in wording between Subsection (d) and Subsection (e)—the former dealing with indirect furnishing of services or facilities and the latter with direct furnishing. Since Congress thus established a difference, says the Commission, and since in the proviso in Subsection (b), making available the meet-competition defense, Congress distinctly used the language of Subsection (e), it must be understood as intentionally precluding the defense for practices described in Subsection (d). We think such an intent cannot be gleaned from so literal a reading of this one phrase in this statute, without any other indication of such an intent on the part of the Congress. We cannot read this phrase "furnishing * * * to any purchaser"—indeed the one word "to"—as making Subsection (b) mean that upon proof

being made that there has been discrimination in services or facilities furnished customers, no matter how furnished, i. e., directly or indirectly, the person charged may rebut the prima-facie case thus made by showing justification, and such rebuttal may consist of a good faith effort to meet competition if the services or facilities were furnished directly in kind to customers but not if they were furnished indirectly by the process of reimbursement or allowance. Such a reading would, as we have already said, be unrealistic in our view. It seems to us the realistic view is that Congress meant the defense to be available to meet the prima-facie case made, i. e., the discrimination in furnishing services or facilities.

Both Exquisite and the Commission refer to the legislative history of the statute. We find there some material which is interesting and helpful, but we are unable to discern any dispositive matter. Numerous bills were introduced on the general subject, but the principal bills were identical ones introduced in the House and Senate, H.R. 8442 on June 11, 1935, and S. 3154 on June 26, 1935. Neither contained equivalents of Subsections (b) or (e); both contained substantially Subsection (d). The bill as reported to the Senate (S.Rep. 1502) on calendar day February 3, 1936, contained no changes pertinent to the present controversy. On April 30th the Senate passed the bill, as reported to it, after amending it on the floor. One amendment adopted on the floor of the Senate, offered by Senators Borah and Van Nuys, made it unlawful for any person to be a party to a sale "which discriminates to his knowledge against competitors of the purchaser, in that any discount, rebate, *allowance,* or *advertising service charge* is granted to the purchaser" over and above such granted to said competitors. (Emphasis ours.) Senator Borah told the Senate: "The matters which we propose to prohibit that [*sic*] of allowing discount or rebate or allowance for advertising service charge to one purchaser without making it available to each and every other purchaser." This amendment would appear to be redundant to Subsection (d), already in the bill, but several Senators said the final statute would really be written in conference. And in fact this amendatory provision was omitted by the conference. The incident of this amendment, like many other phases of the debate, is indicative of the mood of the Senate and the broad sweep of its purposes and consideration.

The other amendment adopted on the floor of the Senate, offered by Senator Moore, was to add a subsection identical to present Subsection (b). Thus, as the bill passed the Senate on April 30, 1936, it included (1) our present Subsection (d), making it unlawful to pay anything to a customer as compensation "for any services or facilities furnished by or through such customer" unless offered to all competing customers; (2) a separate subsection making unlawful any discrimination in discounts, rebates, allowances, or advertising service charges; and (3) the meet-competition defense applied to "the furnishing of services or facilities to any purchaser". The bill then contained no Subsection (e) or any equivalent thereof. Thus there can be no doubt whatsoever that, so far as the Senate was concerned, the proviso in Subsection (b) applied to discriminations in compensation or allowances made to customers for services or facilities furnished by them, as now provided in Subsection (d); there was nothing else in the bill for this language to apply to. The bill thus passed went to the House.

In the meantime, on March 31, 1936, the House bill (H.R. 8442) had been reported (H.R.Rep. 2287). As thus reported, it contained Subsection (d), Subsection (e), and a subsection which contained a meet-competition defense in respect to price discrimination only, saying nothing about services or facilities. On June 2nd the House ordered its bill printed, with the Senate bill substituted as its text. Thus the bill as it passed the Senate became H.R. 8442 on the calendar of the House. The House committee proposed its own bill as an amendment. Then the committee offered amendments

to this amendment. One such amendment thus offered and adopted on the floor was to change the subsection dealing with the burden of proof and the meet-competition defense to read as Subsection (b) now reads. The sole explanation made to the House in respect to it was this one sentence: "It simply allows a seller to meet not only competition in price of other competitors but also competition in services and facilities furnished." Thus, so far as the House is concerned, it clearly appears that the Members understood the defense permitted by the subsection they were enacting applied to competition in "services and facilities furnished"; no limiting words as to manner of furnishing and no differences drawn on that score. As Senators had foretold, the final statute was written in conference and was enacted as we now have it. Since the subsection now (b) was the same in both Senate and House bills, nothing happened to it in conference.

Misfits in words or phrases are not infrequently encountered when bills have been amended in the midst of debate on the floor of one or the other of the Houses of Congress. This statute was amended on the floors of both Houses. It is not surprising that the final product is not perfectly meshed, as it might have been had it come undisturbed from the drafting board of a skilled draftsman.

We find nothing in the legislative history to indicate that the Congress had in mind a rigid limitation of its use of the word "to" in this Subsection (b) or that it here intended to deal with anything less than the furnishing of services or facilities with no critical selection of process by which a discrimination in furnishing services or facilities may be accomplished.

The Commission argues to us that Subsection (d) was aimed at sham transactions. If so, the statute contains no hint of such limitation. The statute outlaws discrimination in payments of anything

of value as compensation for services furnished by the customer, whether the payments are open and notorious or secret and camouflaged. Despite its argument, we doubt that the Commission would go so far as to hold guiltless one who openly and notoriously paid compensation to some customers but not to all competing concerns.

The examiner was of the view that "It is now well settled that the good faith meeting of competition defense set forth in Section 2(b) is not applicable to Section 2(d)." He cited F. T. C. v. Simplicity Pattern Co., 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959). The Commission was of the same view, but agrees in its brief here that no court has yet passed directly on this question. We do not find in the Simplicity Pattern case the holding or the reasoning which the Commission deems dispositive in principle in the case at bar. The Court was there concerned with a violation of Subsection (e), and the questions were whether absence of competition precluded a violation of that section; and whether lack of competitive injury likewise precluded violation. The case did not concern the problem we have here. It dealt with neither Subsection (d) nor the meet-competition defense. Apparently the Commission told the Supreme Court in its brief that this question was not in that case.

The Commission first reached its view of the meaning of this statute in 1956 in Henry Rosenfeld, Inc.,[6] and reaffirmed it in 1957 in J. H. Filbert, Inc.,[7] and again in Admiral Corporation.[8] Its decision in the case at bar was in October, 1960, and the Commission followed the same view in July, 1961, in Shulton, Inc.[9] We find ourselves in agreement with Commissioner Tait, who dissented in the present case, and with Commissioners Kern and Elman, who dissented in Shulton, Inc., and with the United States District Court for the Southern District of Florida in Delmar Construction Co. v.

6. 52 F.T.C. 1535.

7. 54 F.T.C. 359.

8. 55 F.T.C. 2078 (1959).

9. 3 Trade Reg.Rep. ¶ 15,323.

Westinghouse Electric Corp., decided February 24, 1961.[10]

We have discussed at such great length the problem posed in this case because of the great weight we attach to the view of the Commission in respect to the meaning of the statute it is charged with enforcing.[11] We would not lightly reject that view. We reject it now only because upon the most careful consideration we are of firm conviction that view is untenable.

The case will be remanded to the Commission to afford our petitioner an opportunity to present, if it be so advised, a defense under Section 2(b) of the statute to the charges contained in Count I of the complaint, by showing that its furnishing of services or facilities to some purchaser or purchasers was in good faith to meet the services or facilities furnished by a competitor. In all other respects the findings and conclusions of the Commission are affirmed.

So ordered.

---

10. 5 Trade Reg.Rep. (1961 Trade Cas.) ¶ 69,947 (S.D.Fla.).

11. See Skidmore v. Swift & Co., 323 U.S. 134, 139–140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).