UNIVERSAL–RUNDLE CORPORATION, Petitioner,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 14763.

United States Court of Appeals Seventh Circuit.

Aug. 23, 1967.

See also 7 Cir., 352 F.2d 831.

Frank C. McAleer, James R. Fruchterman, Chicago, Ill., for petitioner, Kahn,

Adsit, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., of counsel.

J. B. Truly, Asst. Gen. Counsel, W. Risque Harper, Atty., Federal Trade Commission, James McI. Henderson, Gen. Counsel, Miles J. Brown, Atty., Federal Trade Commission, Washington, D. C., for respondent.

Before DUFFY, Senior Circuit Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Universal-Rundle Corporation, a Delaware corporation, by its petition asks us to review and set aside an order of the Federal Trade Commission issued on June 12, 1964.[1]

Petitioner is a nationwide manufacturer, distributor and seller of plumbing supplies and equipment, including a complete line of "U–R" brand vitreous china and enameled cast-iron plumbing fixtures. In the sale of its products, petitioner has a wholesaler's net price and also a truckload price which is below the wholesaler's net list price. The truckload price is applicable only to the purchases of a truckload or more of fixtures, and the Commission found that the differentials involved are those averaging 10% between truckload prices and the wholesaler's list prices. A truckload order may consist of any combination of fixtures and the discount rate on such truckload purchases varies from order to order, depending on the list and truckload prices of the individual fixtures at time of purchase. As to petitioner, the situation in Philadelphia, Pennsylvania, was that Mars Supply Company, which through several stores sold directly to the consumer, was the only one which bought in truckloads. In 1957 its four truckload orders amounted to $23,251.23. At petitioner's wholesaler's net price Mars would have paid $25,795.53, indicating a preferential allowance or discount of about 9.9%. On the basis of such testimony the Commission found that Mars competed with non-favored customers in Philadelphia through its main store and with its non-favored customers in Camden, New Jersey, through its branch store, and also that Mars competed with non-favored purchasers in selling directly to the consumer.

The Commission found that price discriminations were sufficient "to give the recipients of the lower prices a substantial advantage over their non-favored competitors" and that such discriminations may be substantially to affect customer competition adversely. In its opinion, and by adopting the examiner's decision as modified, the Commission found that competition in the resale of petitioner's "U–R" brand of plumbing fixtures was keen in the Philadelphia-Camden area; that price was a very important competitive factor in the plumbing-fixture business; that the differentials if reflected in the resale price of the products would have been sufficient to divert business from non-favored purchasers to Mars; that the margin of profit in the resale of plumbing fixtures appears to be small; and that a 2% cash discount was essential to a profitable operation. The Commission concluded that under the circumstances "competitive injury may be anticipated if [petitioner's] pricing practices with regard to the sale of its U–R line of products are allowed to continue," and that petitioner's discriminations violated Section 2(a) of the Clayton Act, as amended.

The Commission's final order of June 12, 1964 rejected the examiner's finding that petitioner's sales to its Camden, New Jersey, customers were in interstate commerce, but in other respects agreed with the examiner and denied the appeal from his order. It modified the initial decision accordingly and then adopted it on June 12, 1964.

1. We have carefully examined the record, including the evidence adduced, and we hold that there is no evidentiary

---

I. At the conclusion of hearings, the examiner made an initial decision which was modified by the Commission's final order.

basis that petitioner made any sales to Mars' New Jersey branch in interstate commerce, or that Mars purchased any of the Universal-Rundle line of products and trans-shipped them to its New Jersey branch. Moreover, an inference cannot be substituted for absent evidence. Actually, the suggestion of an inference of transshipment first appeared in the Commission's brief in this court.

2. Further, we hold that there is a lack of substantial evidence in the record as a whole that competition existed between Mars of Philadelphia and petitioner's non-favored Philadelphia customers,[2] who were really wholesalers.[3]

We also hold that, lacking such support, the Commission could not properly find petitioner guilty of the violation charged.

We agree with petitioner's counsel when they say in their brief:

" * * * Plain common sense dictates that if something more than a remote effect upon competition is required, then the evidence must show a substantial degree of existing competition, because it is irrational to presume that in a situation involving minimal or sporadic competition anything more than a remote lessening thereof could ever come to pass. * * * "

In Whitaker Cable Corp. v. FTC, 7 Cir., 239 F.2d 253, at 256 (1956), we said:

" * * * The Act was not intended to reach every remote, adverse effect on competition. * * * "

3. Because of the factual situation which we considered in Perma Life Mufflers, Inc. v. International Parts Corp., 376 F.2d 692 (7 Cir. 1967), cited by the Commission, we do not consider our holding there inconsistent with the result which we now reach in the case at bar.

4. We find it unnecessary to consider other points raised by petitioner in its supplemental brief filed herein.

For the reasons herein set forth the order of the Federal Trade Commission issued June 12, 1964 is set aside.

Order set aside.

---

2. The evidence indicates the *de minimis* nature of the alleged competition. Characteristic of this evidence is testimony of witness Blackman of Black and Brown Company, Inc., who said that such "sales to the consumer were minimal" and that they did not seek retail trade.

Witness Tepper, manager of Richmond Plumbing Supply, testified that it did not display plumbing fixtures in its retail store and sold very little plumbing fixtures directly to customers, its business being basically the selling of heating supplies and that total sales of Universal-Rundle fixtures would be possibly 2%, as an accommodation to plumbers.

Girard Supply and Friedman's Sons were the only other purchasers who might be claimed to compete with Mars in Philadelphia. However no witness representing Girard was called to testify, and the limited evidence of record as to Girard and Mars does not support the Commission's conclusion. As to Friedman's Sons, the record shows that it was a wholesaler, except that it sold petitioner's fixtures directly to home owners, and for the year 1957 its purchases from petitioner amounted to only $1200.

3. This distinction was clearly emphasized in Reines Distributors, Inc. v. Admiral Corporation, 257 F.Supp. 619 (D.C.1965), and the same case in 256 F.Supp. 581 (D. C.1966). In 256 F.Supp. 581, at 587, the court ruled that one such favored customer conducted a "wholesale-retail business" and sold *80%* of its merchandise *at wholesale,* thus having status as a distributor *and therefore defendant's* pricing to it came within the purview of the Robinson-Patman amendment. A similar ruling was made as to a second "distributor", who also was shown to be a "wholesale-retail business" selling about *25%* of its volume *at wholesale.* However, as to a third company said to be a "distributor", where the evidence showed its business was divided *90% retail* and *10%* wholesale, the court held, at 588, that this purchaser could not properly be considered a distributor of Admiral products and therefore sales to it by defendant, for the purposes of the case, were *not* within the purview of the act.