**SURPRISE BRASSIERE CO., Inc.,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 25181.

United States Court of Appeals
Fifth Circuit.

Jan. 29, 1969.

**712**

Peyton Ford, Washington, D. C., Maxwell E. Lopin, New York City, Ford, Ayer, Horan & Lester, Urban A. Lester, Michael S. Yaroschuk, Washington, D. C., of counsel, for petitioner.

J. B. Truly, Asst. Gen. Counsel, Jerold D. Cummins, Thomas F. Howder, Attys., FTC, Washington, D. C., James McI. Henderson, Gen. Counsel, Washington, D. C., for respondent.

Before GEWIN and BELL, Circuit Judges, and BOOTLE, District Judge.

BELL, Circuit Judge:

This case comes to us on a petition to review and set aside a cease and desist order of the Federal Trade Commission issued upon a complaint charging that Surprise violated § 2(d) of the Clayton Act, as amended by the Robinson-Patman Act. 15 U.S.C. 13(d).[1] The petition will be denied and the order enforced.

Surprise is a manufacturer of brassieres and other foundation garments. The complaint alleged that Surprise had violated § 2(d) by failing to make allowances under its cooperative newspaper advertising plan available to all competing customers on proportionally equal terms in two particulars: One, the terms and conditions of Surprise's plan precluded some customers from effectively utilizing such allowances; and two, even among those customers who were in a position to use the plan, Surprise granted some customers allowances above and beyond the terms of said plan.

The evidence disclosed that during the pertinent period Surprise had offered its retail customers a cooperative newspaper advertising program in which Surprise agreed to pay fifty per cent of the retailer's local newspaper advertising of Surprise products up to a maximum of five per cent of annual purchases. It also disclosed that Surprise deviated from the terms of the program in favor of certain large department store customers, granting them seventy five per cent and in some instances, one hundred per cent advertising allowances. Smaller customers competing with the favored department stores were granted only fifty per cent allowances during the same period. Surprise defended these variances as having been made to meet offers of competitors, and therefore they

---

1. § 2(d) provides:

"It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

were within the meeting competition proviso of § 2(b) of the Act.[2] Cf. Exquisite Form Brassiere, Inc. v. F. T. C., 1961, 112 U.S.App.D.C. 175, 301 F.2d 499, 503, cert. den., 369 U.S. 888, 82 S. Ct. 1162, 8 L.Ed.2d 289, holding that payment for services falls within the ambit of § 2(b).

The hearing examiner dismissed the charge that the terms and conditions of Surprise's basic advertising plan effectively precluded some customers from receiving any allowances. He found, however, that Surprise had violated § 2(d) by deviating from its basic plan in making seventy five per cent and one hundred per cent allowances to certain stores without making such allowances available to competing customers. He also found that Surprise discriminated between and among competing customers by granting allowances to certain stores, the total of which exceeded five per cent of annual purchases, the limit ordinarily imposed by Surprise under its plan, and in allowing some of its customers to run newspaper advertisements in excess of the page or size limitations of the plan. The § 2(b) defense was rejected.

On appeal, the Commission upheld the examiner's ruling that Surprise failed to rebut the prima facie case of discrimination made out against it under § 2(d), and also that Surprise had the burden, under a § 2(b) defense, of establishing that its higher allowances to some of its customers were granted in response to allowances offered by other sellers in individual competitive situations. The Commission summed up that Surprise " * * * not only failed to establish an awareness of competitive offers but that it failed to show the competitive necessity for its discriminations."

The Commission also rejected complaint counsel's argument, made on brief and not by way of cross-appeal, that the hearing examiner had erred in approving Surprise's basic advertising plan. But rather than express approval, the posture of the case is that the charge, with respect to validity of the plan, was dismissed for lack of proof. The Commission did, however, agree with another objection to the initial decision, raised in the same manner by complaint counsel: that Surprise's in-store promotional aids such as bust forms, window display cards and the like, legally constituted suitable alternatives to the advertising allowances. The fact was that these items were offered to all customers; those who could use the newspaper allowances as well as those who could not. In other words, a customer could employ one or the other, or both. Although recognizing that § 2(d) permits a seller to offer an alternative service or allowance for the purpose of permitting all competing customers to participate in a promotional plan, it stated that the standard of proportionally equal terms required by the statute was not present under the facts. That part of the initial decision which found alternative allowances under the plan was set aside.

Surprise's position here is that it was denied the benefit of the § 2(b) defense by the parsimonious view of the Commission as to the breadth of the defense. A denial of procedural due process is also claimed with respect to the Commission having taken up the alternative allowances objection of complaint counsel on brief rather than through a cross-appeal. Complaint counsel filed no cross-appeal with the Commission.

2. § 2(b) in pertinent part:
"Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however,* That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

## I.

■ We will first consider the due process argument. The contentions regarding it are confused with the further idea that the Commission, contrary to the trial examiner, somehow held that Surprise's basic plan was unlawful. As has been stated, there was no such order by the Commission. Its order is based on the finding that Surprise deviated from that program. The aspect of the initial decision which the Commission set aside was the suggestion that if any of Surprise's customers were functionally excluded from participating in the newspaper advertising program, Surprise's basic plan nevertheless offered a suitable alternative in the form of in-store promotional aids. The Commission disagreed and this ruling was clearly correct. It is supported by the express language of the plan and the practice under it. The Commission left standing that part of the initial decision respecting Surprise's basic plan as being suitable and usable by all competing customers; it merely held that the in-store promotional aids were not alternatives to newspaper advertising allowances under it.

■ The due process argument itself is without merit. Upon consideration, the Commission decided, notwithstanding the absence of a cross-appeal, to review the disputed issue by authority of its Rule 3.24(a), 16 C.F.R. § 3.24(a) (1966), which provided:

"Upon appeal from or review of an initial decision, the Commission will consider such parts of the record as are cited or as may be necessary to resolve the issues presented; and in addition will, to the extent necessary or desirable, exercise all the powers which it would have exercised if it had made the initial decision."

We need not decide whether this rule was precisely applicable under the circumstances; it is enough to say that Surprise suffered no prejudice from the action of the Commission. It was granted ample time within which to reply. It does not contend to the contrary; rather it chooses to rely altogether on its supposed right to have the contention of complaint counsel raised on cross-appeal and not in brief. This question need not be resolved as we perceive no prejudicial error. See § 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 706, on the prejudicial error rule. Our case of Pacific Molasses Co. v. Federal Trade Commission, 5 Cir., 1966, 356 F. 2d 386, involving a denial of procedural due process by the hearing examiner is inapposite on its face. The ruling there was based on prejudice. Surprise had a full hearing. Cf. Luria Brothers and Company v. Federal Trade Commission, 3 Cir., 1968, 389 F.2d 847, 862–863. This is not to say, of course, that it would not have been the better practice for complaint counsel to have appealed under Rule 322(a) of the Rules of Practice of the Commission. We simply hold that the requisite prejudice is absent here.

## II.

Surprise does not attack the underlying findings which the Commission adopted in rejecting its meeting of competition defense; rather it disputes the legal standards applied. Indeed, it could not because the findings involve credibility questions and the weight to be given to testimony. Moreover, they are supported by substantial evidence.

■ This leaves then for decision the legal questions regarding the § 2(b) defense. As stated, the burden of establishing the elements of a § 2(b) defense falls upon the party asserting such defense. The position of the Commission is that such a party, in order to rebut the Commission's prima facie case, must show that it learned the existence of facts which would lead a reasonable and prudent person to believe that a granting of a lower price would in fact be meeting the equally low price of a competitor. Federal Trade Commission v. A. E. Staley Mfg. Co., 1945, 324 U.S. 746, 759–760, 65 S.Ct. 971, 89 L.Ed. 1338. It also urges that it must be

shown that the price was made in good faith, i. e., that it was granted because the seller had grounds to believe that the lower price of the competitor threatened to deprive him of a customer. Staley at p. 753, 65 S.Ct. 971. Surprise, on the other hand, relies primarily on this court's decision in Callaway Mills Co. v. Federal Trade Commission, 5 Cir., 1966, 362 F.2d 435, that it may meet competition generally through meeting a plan or system of its competitors. The difficulty with this argument of Surprise, as we shall see, is that it is not factually supported.

Prior to the 1936 Robinson-Patman Amendment, § 2 of the Clayton Act provided that nothing contained in the Act was to prevent discriminations made in good faith to meet competition. By the amendment, the defense was contracted to apply only to discriminations made in good faith to meet an equally low price of a competitor. Federal Trade Commission v. Sun Oil Co., 1963, 371 U.S. 505, 516-517, 83 S.Ct. 358, 9 L.Ed.2d 466.

Nevertheless, we held in *Callaway Mills*, supra, that the allowance of volume discounts according to a plan or system as distinguished from individual competitive responses is not condemned per se. In that case the sellers, Callaway and Cabin Crafts, two carpet manufacturers, had granted retroactive annual volume discounts in an effort to meet similar discount schedules offered by competitors. The facts were that all of the customers of the two carpet companies had been offered similar volume discounts by other carpet manufacturers and that there was competitive pressure from the buyers on Callaway and Cabin Crafts to meet these offers. The Commission held that the two companies could not adopt volume discount pricing formulae to meet this competition. We disagreed on the reasoning that this placed an impossible burden on these companies. We pointed out:

"As the Supreme Court said in FTC v. A. E. Staley Mfg. Co., supra, 'the statute does not place an impossible burden upon sellers.' In the circumstances and under the facts of this case, Callaway and Cabin Crafts could in 'good faith' attempt to meet the competition by granting similar volume discounts especially since no workable alternative is evident." 362 F.2d at p. 442.

In contrast, Surprise was not confronted with the problem of trying to match its prices with the prices of competitors that varied according to the cumulative annual purchases of each customer. It was faced with specific competitive situations but its proof did not show that it limited its variances to specific competitive situations.

In addition, two recent circuit court decisions, more analogous on the facts, militate against Surprise. Exquisite Form Brassiere, Inc. v. Federal Trade Commission, 123 U.S.App.D.C. 358, 360 F.2d 492 (D.C.Cir., 1965), cert. den., 384 U.S. 959, 86 S.Ct. 1584, 16 L.Ed.2d 672 (1966), and Rabiner & Jontow, Inc. v. Federal Trade Commission, 386 F.2d 667 (2 Cir., 1967), cert. den., 390 U.S. 1004, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968). In those cases, the courts upheld the view that a seller cannot deviate from promotional advertising programs in order to meet competition generally as opposed to meeting competition in individual competitive situations.

The contention that the hearing examiner erred as a matter of law by requiring an impossible burden of specific foreknowledge as to each and every detail of competitors' allowances before a seller can avail itself of a § 2(b) defense is equally without merit. The examiner required no more than is taught in *Staley*. The court there did not think it an impossible burden to require "* * * a showing of diligence on the part of respondents to verify the reports which they received, or to learn of the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact be meeting the equally low price of a competitor." 324 U.S. at p. 759, 65 S.

716

Ct. 971 at p. 977. The long and the short of the matter is that Surprise's proof falls short of the Callaway Mills standard.

There is one tag-end. Surprise contends that the examiner and tangentially, the Commission also erred in rejecting the § 2(b) defense on the ground that Surprise was aware that the prices it was meeting were in some instances unlawful. This argument, too, is without factual support. On the unlawfulness of the price being met question, see the discussion in Standard Oil Company v. Brown, 5 Cir., 1956, 238 F.2d 54, 58.

We conclude that the Commission's order is supported in fact and law and there the matter ends. The petition to review and set aside the cease and desist order of the Commission is denied, and the order will, pursuant to statute, be enforced. 15 U.S.C.A. § 21(c).

Enforcement ordered.