**M. D. RUTLEDGE et al., Appellants,**

v.

**ELECTRIC HOSE & RUBBER COMPANY et al., Appellees.**

**Nos. 71–2840, 71–2841.**

United States Court of Appeals, Ninth Circuit.

Jan. 30, 1975.

As Corrected March 3, 1975.

---

Joel R. Bennett (argued), Palos Verdes, Cal., for appellants.

Patrick Lynch, (argued), Frank R. Johnston, Los Angeles, Cal. (argued), John F. McClatchey, Cleveland, Ohio (argued), Gibson, Dunn & Crutcher, John J. Hanson, Don J. Belcher, Newlin, Tackabury & Johnston, Frank R. Johnston, O'Melveny & Myers, Homer I. Mitchell, Patrick Lynch, Los Angeles, Cal., Arthur, Dry, Kalish, Taylor & Wood, Walter Barthold, New York City, Mitchell, Silberberg & Knupp, Robert L. Winslow, Los Angeles, Cal., Domke, Marcoux, Allen & Beaman, John H. Schomer, Jackson, Mich., Robert J. Burdett, Chicago, Ill., Bruce M. Gleason, Los Angeles, Cal., Winston & Strawn, Earl A. Jinkinson, John W. Stack, Chicago, Ill., Thompson, Hine and Flory, John F. McClatchey, Cleveland, Ohio, Cantey, Hanger, Gooch, Cravens & Munn, Cecil F. Munn, Edward L. Kemble, Fort Worth, Tex., McCutchen, Black, Verleger & Shea, Philip K. Verleger, Los Angeles, Cal., and Jones, Day, Cockley & Reavis, George H. Rudolph, Victor DeMarco, Cleveland, Ohio, for appellees.

Before GOODWIN and WALLACE, Circuit Judges and EAST, Senior District Judge.*

## OPINION

EAST, Senior District Judge:

### THE CASE

This treble damage antitrust action was filed on April 29, 1969. The cause ultimately came on for trial before the District Court sitting without a jury on February 25, 1971 and reached final judgment on June 2, 1971.

Appellants, M. D. Rutledge, doing business as Rubber Hose Supply Company and Industrial Hose and Rubber Company, and Mechanicals, Inc., a corporation, owned and controlled by Rutledge, appeal from an order of the District Court entered on April 22, 1971, granting the appellees' motion for dismissal pursuant to Rule 41(b) (Fed.R.Civ.P.) and the final judgment in favor of all of the appellees entered on June 2, 1971. We affirm.

### THE INDUSTRY

The products involved in this case are hydraulic hose assemblies, which consist

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

of hydraulic hose and hydraulic hose couplings. Hydraulic hose is simply a reinforced flexible hose, the primary purpose of which is to carry fluids under relatively high pressures, and have been for many years manufactured and sold by companies generally known as "hose companies." A hydraulic hose assembly consists of a length of the hydraulic hose with a coupling or fitting attached at each end to make it useful and has been designed and manufactured by specialty companies generally known as "couplers."

Rutledge is a coupler. Five of the appellees are hose companies and seven are couplers.

## PRIOR LITIGATION

This appeal is the latest chapter in a story that goes back over 12 years to April, 1962, when a Federal Grand Jury commenced criminal investigations of companies in the hydraulic hose assembly industry. Following approximately three years of investigation by three Grand Juries, two separate indictments were returned in 1965, one of which charged six hose companies with price fixing. That proceeding ended with pleas of nolo contendere. The other indictment charged the seven coupler appellees and a number of individuals with conspiring in antitrust actions. Following three years of proceedings, that criminal cause succumbed to motions for acquittal and dismissal. United States v. Aeroquip Corporation, 284 F.Supp. 114 (E.D.Mich.1968) (Detroit suit).

Some of the appellees herein were not party to those proceedings.

## CLAIMS OF RUTLEDGE TRIED

The record shows that Rutledge failed to cooperate with his counsel's efforts to arrive at a subscribed agreed pretrial order. Following Rutledge's refusal to join and after notice and hearing, the District Court on January 5, 1971 settled and entered a pre-trial order setting forth the claims of Rutledge as follows:

(1) Alleged conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

(2) Alleged discriminatory sales in violation of Sections 2(a) and 2(d) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a) and (d).

(3) Alleged conduct on the part of the coupler appellees in violation of Section 2(f) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(f).

## ASSIGNMENTS OF ERROR

There are numerous assignments of error; however, we are satisfied that a discussion of the following seven assignments is sufficient for an appropriate disposition of this appeal:

"1. Was it reversible error for the District Court to rule that this matter may not be maintained as a class action under Rule 23, [Fed.R.Civ.P.]?"

"2. Was it reversible error for the District Court to terminate plaintiffs' discovery rights only one month after defendants' answers were filed?" and to refuse "to grant a continuance [of trial] for purposes of discovery"?

"5. [Which we paraphrase as follows: Was it reversible error for the District Court to deny appellants their constitutional right to a jury trial under Rule 38 (Fed.R.Civ.P.)?

b. Is Local Rule 13 invalid and unreasonable because it is inconsistent with Rule 38(b)?

d. Did the court abuse its discretion in declining to determine that the issues in the case may be tried to a jury under Rule 39(b) (Fed.R. Civ.P.)?]"

"7. Was it reversible error for the District Court to rule that the witnesses who had testified at the government's criminal trial and who resided beyond the 100 mile subpoena power of the Court, were not 'unavailable' within the meaning of California Evidence Code Section 240 thus precluding the use of their former testimony against the couplers?"

"8. Was it reversible error for the District Court to exclude from evidence the copy of the 'Rogge-Fischer' letter [Exhibit 19] proffered by plaintiffs?"

"9. Was it reversible error for the District Court to grant defendants'

Motions to Dismiss under Rule 41(b) [Fed.R.Civ.P.]?"

"12. Was it reversible error for the District Court to rule that the former testimony given at the Detroit trial may be used against the couplers only in connection with Sherman Act claims but not as to Robinson-Patman claims?"

We find no abuse of judicial discretion on the part of the District Court in any other aspect of the pretrial or trial proceedings, and conclude all other assignments of error to be without merit.

## DISCUSSION

Assignment of Error No. 1:

The appellees moved the District Court pursuant to Rule 23 for an order determining that the action could not be maintained as a class action, asserting therein that under the circumstances of the case, the class device was not superior to other available methods within the meaning of Rule 23(b)(3) and that Rutledge was not an adequate class representative within the meaning of Rule 23(a)(4). The District Court granted the motion.

■ It is now recognized that the failure of any one of Rule 23's requirements destroys the alleged class action. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 561 (2d Cir. 1968).

■ In deciding whether to allow a class action, a primary determination to be made is whether the class action is superior to, and not just as good as, other available methods for handling the controversy, and such a determination lies in an area where the trial court's discretion is paramount. City of New York v. International Pipe & Ceramics Corp., 44 F.R.D. 584, 587 (S.D.N.Y.1968), app. dismissed 410 F.2d 295 (2d Cir. 1969); Buford v. American Finance Company, 333 F.Supp. 1243, 1250 (N.D. Ga.1971); Alameda Oil Co. v. Ideal Basic Industries, Inc., 326 F.Supp. 98, 105 (D.Colo.1971); cf. Amendments to Rules of Civil Procedure, Advisory Committee's Notes, 39 F.R.D. 69, 103 (1966).

■ Also, "as a result of the sweeping changes in Rule 23, a court must now carefully scrutinize the adequacy of representation in all class actions." Eisen v. Carlisle & Jacquelin, supra 391 F.2d at 562.

■ We conclude that the District Court's order disallowing the class action was correct and its reasons therefor were sound. We find no abuse of judicial discretion in the entry of the order. See Shields v. Valley National Bank of Arizona, 56 F.R.D. 448 (D.Ariz.1971), and Interpace Corporation v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir. 1971).

Assignment of Error No. 2:

■ On April 13, 1970, the District Court, following notice and hearing, limited and fixed the time for the completion of Rutledge's discovery at July 13, 1970, 15 months after the action was filed. The District Court's findings of fact Nos. 51 and 52 reveal the situation which confronted the District Court, and we are satisfied that the record fully supports the findings. We find no abuse of judicial discretion in limiting the time for Rutledge's discovery. Fulton v. Coppco, Inc., 407 F.2d 611, 613 (10th Cir. 1969), and MacKay v. American Potash & Chemical Co., 268 F.2d 512, 517 (9th Cir. 1959).

■ Rutledge complains that the last answer of the appellees was not filed until June 11, 1970. Dilatoriness on the part of one party, if any, is no excuse for clear-cut, prolonged dilatory activity on the part of a moving party. The function of a plaintiff's discovery is to secure evidence in support of his claims. For an even more severe sanction against a dilatory plaintiff, see California Molasses Co. v. C. Brewer & Co., 479 F.2d 60 (9th Cir. 1973).

■ A related assignment of error, based on the District Court's refusal on January 6, 1971 to grant a continuance of the trial date of the following January 19 for the purpose of permitting Rutledge to continue its discovery, is frivolous. The only ground asserted for the continuance was to change lawyers. We find no abuse of judicial discretion in that refusal. Cf. Thompson v. Fleming, 402 F.2d 266 (5th Cir. 1968); see Grune-

wald v. Missouri Pacific Railroad Company, 331 F.2d 983, 987 (8th Cir. 1964).

Assignment of Error No. 5.b.:

Rule 38(a) generally provides that the right of trial by jury shall be preserved to the parties inviolate. Rule 38(b) allows any party to demand a trial by jury by serving a demand therefor in writing within specified times. Specifically the rule provides "[s]uch demand may be indorsed upon a pleading of the party," and, further, in subsection (d):

"Waiver. The failure of a party to serve a demand as required by this rule . . . constitutes a waiver by him of trial by jury."

 On its face, the rule prescribes "positive action which a party must take in the exercise of his right of trial by jury," else he be deemed to have waived the right. Petsel v. Chicago B. & Q. R. Co., 101 F.Supp. 1006, 1007 (S.D.Iowa 1951). See 5 Moore's Federal Practice ¶ 38.40, at 327 et seq. The waiver provisions of Rule 38 are constitutional. 5 Moore's Federal Practice ¶ 38.08, p. 83, n. 68.

Local Rule 13, promulgated and in effect in the Central District of California for some years prior to the institution of this action by local counsel, provides:

"Any party may demand a jury as provided in F.R.Civ.P., Rule 38(b), but such demand, *if included* in a pleading as referred to in Rule 38(b), shall be set forth at the end thereof and be signed by the party making such demand or his attorney. The caption of the pleading in which the demand is made shall also contain the following: 'Demand for Jury Trial.' The demand may be made in a separate written, signed document by the party making such demand or his attorney." (Emphasis supplied.)

It follows that Rutledge had at his election one of two procedures for making his "Demand for Jury Trial" under Rule 38 as refined by the local rule in order to preserve his right of jury, *viz.*: (1) the serving upon other parties of a demand therefor in writing, or (2) "Such demand may be indorsed upon a pleading."

He elected to utilize the second procedure and caused to be typed in the caption of his complaint below the title of the pleading the words "Jury Demanded," and further started the language of his complaint as follows:

"The above named plaintiffs, by their attorneys, bring this civil action against the above named defendants, and each of them, and demanding trial by jury, complain and allege as follows:"

 Rule 38(b) uses the phrase "indorsed upon a pleading," but is silent as to the form and substance of the indorsement. The common ordinary understanding of the word "indorsed" and necessarily the written act thereof is a writing. Webster's New International Dictionary (2d ed.). Rule 38(b) commands under procedure 2 that the demand for jury trial be indorsed upon a pleading and the local rule merely refines or prescribes the form and substance of the indorsement. Contrary to Rutledge's contention, we conclude that the requirements of the local rule do not conflict with any of the provisions of Rule 38, nor does the local rule impose additional basic procedural requirements beyond the local rule making power. See Colgrove v. Battin, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973). The local rule in no way restricts any of the provisions of Rule 38 and merely prescribes the location and the form of the indorsement of a demand upon a pleading. 12 Wright and Miller, Federal Practice and Procedure § 3154, p. 233, and 7 Moore's Federal Practice ¶ 83.03, pp. 83–89, n. 17.

 The reasonableness of the requirements of the local rule are self-evident. The demand for jury trial on the face of the pleading is to alert the clerk in the docket process, and the signed statement at the end is to constitute the affirmative action required by Rule 38. Rutledge failed to comply and the District Court was correct in insisting on compliance with the local rule and order-

ing the trial to be had by the court without a jury.

Assignment of Error No. 5d.:

■ This assignment refers to rule 39(b); however, Rutledge's motion for relief from the order striking the jury demand was predicated under Rule 6(b) (Fed.R.Civ.P.) on the ground of "excusable neglect." Relief under that rule is within the "discretion" of the District Court, and that discretion should rarely be exercised to grant a trial by jury in default of a proper request for it. Mason v. British Overseas Airways Corp., 20 F.R.D. 213 (S.D.N.Y.1957), cited in Tomlin v. Pope & Talbot, Inc., 282 F.2d 447, 449 (9th Cir. 1960). Clearly no abuse of judicial discretion occurred in the denial of the Rule 6(b) motion.

Rutledge urges that under the circumstances and in view of Rutledge's attempt to secure a jury trial, the District Court should have ordered a jury trial under Rule 39(b).

The District Court was facing an avowed highly complex and prolonged trial involving great expense and months of judicial time, yet with little or no showing of good faith desire for a jury trial. When the jury issue arose, the trial court asked about appellants' true intent in demanding a jury and counsel replied, in part, "I assume that as a trial tactic I can always waive as I move toward the [trial] date itself . . . ."

■ "The denial of a motion made under this rule is to be sustained unless an abuse of judicial discretion is shown. See Johnson v. Gardner, 179 F.2d 114, 118 (9th Cir. 1949). For this reason appellate courts normally refuse to interfere. 5 Moore's Federal Practice, 2d ed., ¶ 39.09, p. 715." Tomlin, supra 282 F.2d at 449.

■ Finally, we believe that in these private antitrust complicated proceedings, the District Court was, as above stated, faced with many other important factors. In our weighing of the nature and totality of all circumstances of the case, the complexity of expected jury questions, and the public interest generally, we cannot say that the denial of a jury trial under the provisions of Rule 39(b) was an abuse of judicial discretion. 9 Wright and Miller, Federal Practice and Procedure, § 2334, p. 120, n. 49.

Assignments of Error Nos. 7 and 12:

These two assignments relate to the evidence proffered by Rutledge, namely, 40 volumes of transcribed testimony of certain governmental witnesses in the Detroit suit who now reside distant from the State of California.

Section 1291 of the California Evidence Code provides, inter alia:

"Former testimony offered against party to former proceeding. (a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and:

"(1) * * *

"(2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (Emphasis supplied.)

Although the District Court was originally of the view that the transcripts might be admissible as former testimony involving the coupler defendants in the Detroit suit, but not the hose company appellees, after hearing the evidence at trial, the District Court concluded to reject the offer on the basis that the Detroit transcripts were inadmissible because Rutledge had not established unavailability of the witnesses, and further that the coupler appellees had no fair opportunity to cross-examine the declarant as specified in § 1291(a)(2).

■ The record discloses that the District Court took the unavailability status of the witnesses whose testimony was proffered in transcript form on a one-to-one basis, and in each instance, found that Rutledge had not exercised "reasonable diligence" within the meaning of § 240(a)(5) of the California Evidence Code. The District Court had substantial discretion in deciding what constitutes unavailability within the mean-

ing of § 240. Sanchez v. Bagues & Sons Mortuaries, 271 Cal.App.2d 188, 192–194, 76 Cal.Rptr. 372 (1969).

■ We find no abuse of judicial discretion in the above rulings.

In the Detroit suit, the coupler defendants were charged with having conspired among themselves to persuade and induce their suppliers of hydraulic hose to grant them lower prices than were charged to their competitors. In this case, Rutledge alleges that the hose company appellees conspired with the coupler appellees in violation of Section 1 of the Sherman Act. Their theory at trial, however, was even further from the facts alleged in Detroit. All that Rutledge attempted to prove at trial was the existence of a mere price fixing conspiracy on the basis of consciously parallel uniformity of prices. There was no evidence of any effort or agreement to induce or persuade those companies to grant lower prices as charged in the Detroit case.

In addition, the appellees were charged in separate counts with violations of Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13. No Robinson-Patman violation was charged in the Detroit suit.

■ The District Court concluded that because of the substantial disparity between the issues at the Detroit trial and the issues as they emerged at trial in this action, the coupler defendants did not have an opportunity at the Detroit trial to cross-examine any witnesses called by the government with a motive and interest similar to that which they had in this proceeding, and rejected the proffered transcribed testimony.

The record fully supports that conclusion, and the proffered former testimony clearly does not qualify for admission in evidence under § 1291(a)(2).

Assignment of Error No. 8:

The so-called Rogge-Fischer letter (Rutledge's Exhibit 19) is a typed copy of a three-page document assertedly written by W. F. Rogge as an agent of Aeroquip Corporation, a defendant in the Detroit suit and a coupler trade associa-tion, to George Fischer of The B.F. Goodrich Company, a defendant in the Detroit suit and herein, on February 20, 1958, and was proffered by Rutledge in making proof on his Section 2(a), (d) and (f) of the Robinson-Patman Act claims.

For the authenticity of the letter (Section 1400, California Evidence Code), and in satisfaction of the best evidence rule (Sections 1501–1503, California Evidence Code), Rutledge relied on the affidavit of Dwight Moore, one of the government's trial counsel in the Detroit case, and an offer of proof of asserted testimony by Rutledge personally. The District Court rejected the offer on the grounds of a failure of authentication as well as on a failure to comply with the secondary evidence admission rule.

> "In the federal courts the trial judges have great latitude on questions of admissibility of evidence." Batelli v. Kagan and Gaines Co., 236 F.2d 167, 170 (9th Cir. 1956).

■ The record and the offer of proof are silent as to the authorship of the Rogge-Fischer letter and we find no abuse of discretion in rejecting the offer.

Assignment of Error No. 9:

The appellees base their Rule 41(b) motion for dismissal of the cause on the premise that the facts of the cause had been presented as a nonjury trial before the District Court, and upon the grounds that Rutledge had failed to establish by satisfactory proof any of his claims against any of the appellees.

■ We are aware that the granting of a Rule 41(b) (nonsuit in a nonjury trial) motion and the District Court's findings of fact thereon may not be set aside "unless clearly erroneous." Rule 52(a) (Fed.R.Civ.P.). The fact finding process under a Rule 41(b) motion calls for an adjudication upon the merits of the plaintiff's claims and may involve a weighing of the evidence as it stands at the close of the plaintiff's case by the District Court.

■ We are also aware that on a Rule 50(a) (Fed.R.Civ.P.) motion for a directed verdict in a jury trial at the close of an opponent's case, the District

Court must consider all of the evidence in the light most favorable to the plaintiff and may grant the motion only if *as a matter of law* the evidence is insufficient to justify a verdict for the plaintiff. 5 Moore's Federal Practice, ¶ 41.13 [3] and [4], pp. 1153–1156. "In considering a motion for a directed verdict, the court must give the party against whom the motion is made the benefit of all reasonable evidentiary inferences. [Cited authority omitted.] This is no less true in an antitrust case. However, if there is no substantial evidence to support the claim, the court must direct a verdict. Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co., 498 F.2d 1137 (CA9 1974)." Cleary v. National Distillers and Chemical Corporation, 505 F.2d 695 (9th Cir. 1974).

Earlier we were confronted with Rutledge's claim that his trial should have been held as a jury trial and he makes a formidable assignment of error in that regard. Accordingly, with the view of conserving judicial time and in an effort of reaching finality in this prolonged litigation, we will utilize the directed verdict test in analyzing for error the District Court's order granting the Rule 41(b) motion and its findings of fact and conclusions of law entered in support of the final judgment.

Section 1 of the Sherman Act:

 · We are satisfied that a full and fair reading of the District Court's order of dismissal and its findings of fact and conclusions of law entered in support of the final judgment clearly indicates that the District Court had concluded that as a matter of law Rutledge had failed to produce sufficient evidence, when viewed in a light most favorable to Rutledge in support of his Section 1 of the Sherman Act claims against the hose company appellees. Indeed our independent search of the record finds no evidence of any joint or concerted action among any of those appellees to accomplish any crime or unlawful purpose proscribed by Section 1 of the Sherman Act. *Standard Oil, supra,* and *Lynch, supra.*

Robinson-Patman Section 2(a) Claim:

We are also satisfied that from a full and fair reading of the District Court's findings and conclusions, it is revealed that the District Court concluded as a matter of law that Rutledge had failed to produce any evidence of the elements of a prima facie violation of 15 U.S.C. § 13(a).

Section 2(a) deals with specific sales transactions, and provides that such transactions are unlawful *only* if these six separate jurisdictional elements are present:

(1) Two or more contemporaneous sales by the same seller. Bruce's Juices v. American Can Co., 330 U.S. 743, 755, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), and Texas Gulf Sulphur Company v. J. R. Simplot Company, 418 F.2d 793, 808 (9th Cir. 1969).

(2) At different prices. Flintkote Company v. Lysfjord, 246 F.2d 368, 392 (9th Cir. 1957).

(3) Of commodities of like grade and quality. Minneapolis-Honeywell Co. v. F.T.C., 191 F.2d 786 (7th Cir. 1951), cert. dismissed 344 U.S. 206, 73 S.Ct. 245, 97 L.Ed. 245 (1952).

(4) Where at least one of the sales was made in interstate commerce. Universal-Rundle Corporation v. F.T.C., 382 F.2d 285 (7th Cir. 1967), and Northern California Monument Dealers Assn. v. Interment Assn. of California, 120 F.Supp. 93 (N.D.Cal.1954).

(5) The discrimination had the requisite effect upon competition generally. Tri-Valley Packing Association v. F.T.C., 329 F.2d 694 (9th Cir. 1964).

(6) The discrimination caused injury to the plaintiff. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264–265, 66 S.Ct. 574, 90 L.Ed. 652 (1946); Secatore's, Inc. v. Esso Standard Oil Co., 171 F.Supp. 665, 667 (D.Mass.1959); and Youngson v. Tidewater Oil Co., 166 F.Supp. 146, 147 (D.Or.1958).

■ We have perused the record and find no direct or inferential evidence in support of all the six necessary elements of a prima facie violation of the Section 2(a) claim and deem the District Court conclusions correct.

**Robinson-Patman Section 2(d) Claim:**

It is manifest from a reading of the record and Rutledge's brief on this appeal that he has misread the proscription of 15 U.S.C. § 13(d).

■ Section 2(d) does not refer to benefits to "favored buyers" in connection with the original sale to the buyer, such as discounts, nor does it refer to a seller who charges different prices to different buyers according to the qualification or functional level of the buyer; rather it refers to payments in connection with the resale by the buyer of the goods, for advertising, promotion or other similar purposes. Exquisite Form Brassiere, Inc. v. F.T.C., 112 U.S.App. D.C. 175, 301 F.2d 499 (1961); Rowe, Price Discrimination Under the Robinson-Patman Act, at 371. *Cf.* Surprise Brassiere Co. v. F.T.C., 406 F.2d 711 (5th Cir. 1969).

■ The record is bare of any evidence of payment or lower price allowance by any hose manufacturer to any coupler of any sum in connection with any of the services with which Section 2(d) concerns itself, to wit, promotion, advertising or similar activities connected with the resale of goods.

The District Court correctly concluded that as a matter of law the Section 2(d) claim must fail.

**Robinson-Patman Section 2(f) Claim:**

The District Court outrightly concluded as a matter of law that Rutledge had not established a 15 U.S.C. § 13(f) claim against any coupler appellee. We have reviewed the authorities relied upon in the order of dismissal, and conclude that the District Court was right.

Affirmed.

ALFRED T. GOODWIN, Circuit Judge (specially concurring):

*I concur in the majority opinion insofar as it affirms the dismissal of the action. I do so because I am satisfied that the proof put on by the plaintiff would not have sustained a verdict if there had been a jury.*

*I do not approve the district court's refusal to permit the plaintiff to rehabilitate its demand for a jury trial in order to comply with local rules. While I agree with the district court that the conduct of some of the plaintiff's earlier lawyers was hardly a model of efficiency and diligence, it is risky business to punish inept lawyers by denying their client a trial by jury. I would have resolved the doubts about compliance with the local rules in favor of allowing the party to cure the deficiency. On the whole record in this case, however, any error or abuse of discretion with reference to the plaintiff's Seventh-Amendment rights was harmless.*