**In re Ludwig Concord WENCL, Debtor.**

**Timothy D. MORATZKA, Plaintiff,**

v.

**Ludwig WENCL, Julaine Wencl, and Tom Wencl, Defendants.**

**Bankruptcy No. 3–85–1289.
Adv. No. 3–86–50.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

March 27, 1987.

Timothy D. Moratzka, Hastings, Minn., pro se.

Brian F. Kidwell, St. Cloud, Minn., for defendants.

## ORDER DENYING MOTION FOR TRANSFER OF ADVERSARY PROCEEDING TO U.S. DISTRICT COURT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding has come on before the undersigned United States Bankruptcy Judge upon Defendants' motion under LOC.R.BANKR.P. (D.Minn.) 103(d) for an order determining entitlement to jury trial and transferring this adversary proceeding to United States District Court. Defendants appear by their attorney, Brian F. Kidwell. Plaintiff (hereinafter "the Trustee") appears *pro se*. Counsel have submitted the motion upon briefs.

The Trustee commenced this adversary proceeding by filing a complaint on February 25, 1986. He seeks judgment in his favor avoiding a number of pre-petition transfers of real and personal property by Debtor to Defendants Julaine Wencl and Tom Wencl, which he alleges to have been fraudulent. The property in question includes real estate, livestock, farm equipment, cash, and funds represented by a certificate of deposit, all of a total alleged value of over $45,000.00. Plaintiff does not pray for entry of a money judgment against Defendants, but rather for equitable relief in the form of a judgment avoiding the transfers and/or adjudicating that the estate has a present interest in the transferred property. He premises his causes of action exclusively upon state law, specifically the Uniform Fraudulent Conveyance Act as codified at MINN.STAT § 513.20 *et seq.*

On March 28, 1986, Defendants filed a joint answer in which they admitted that all of the alleged transfers had taken place but denied that they were made with intent to hinder, delay, or defraud creditors. Defendants' answer included in its caption the words "Jury Trial Demanded."

Defendants now move for an order of this Court determining that this adversary proceeding is a "non-core proceeding" under the principles set forth in 28 U.S.C. § 157, finding that Defendants have properly claimed a right to jury trial, and transferring this adversary proceeding to one of the Judges of the United States District Court for this District as required by LOC. R.BANKR.P. (D.Minn.) 103(d). They argue that had the Trustee commenced this lawsuit in Minnesota State District Court they would have been entitled to a jury trial. They also argue that the Trustee's exclusive reliance on state law and the allegedly-remote relationship between this cause of action and Debtor's bankruptcy case make this a "non-core proceeding" in which a bankruptcy judge may not enter final judgment. They then argue on the preceding two conclusions that this adversary proceeding must be transferred to a U.S. District Judge for disposition. The Trustee argues that his causes of action under state law are purely equitable in nature, that Defendants are therefore not entitled to a jury trial under state law, and that this adversary proceeding is plainly a "core proceeding" under 28 U.S.C. § 157(b)(2)(H).

One point can be addressed without extended discussion. This adversary proceeding clearly is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H), regardless of the fact that the Trustee has exercised his power under 11 U.S.C. § 544(b) to bring it on the basis of state law rather than on 11 U.S.C. § 548. The language in 28 U.S.C. § 157(b) categorizing proceedings to avoid fraudulent

transfers as core proceedings is not qualified or narrowed by a requirement that such proceedings be founded on federal substantive law. To the contrary, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). In point of fact, the process of garnering fraudulently-transferred assets back into the bankruptcy estate—to the resultant benefit of all creditors—is one of those proceedings which is by its very nature essential to the adjustment and restructuring of debtor-creditor relationships that is at the core of federal bankruptcy jurisdiction. *See, e.g., Gaslight Club, Inc. v. Official Creditors Committee,* 46 B.R. 209, 211 (N.D.Ill. 1985).[1] As a result, all fraudulent-transfer actions—whether based on state or federal substantive law—appropriately are classified as "core proceedings." *In re Harbour,* 59 B.R. 319, 323–24 (W.D.Va.1986).

The issue presented here is not whether a bankruptcy judge has the authority to conduct a jury trial under the current jurisdictional scheme for adjudication of bankruptcy disputes. To the best of this Court's knowledge, no Bankruptcy Judge in this District has decided that issue. As a practical matter of judicial administration, the Bankruptcy Court for the District of Minnesota has elected by rule to transfer adversary proceedings to a U.S. District Judge for conduct of jury trials, where a party is entitled under law to trial by jury and makes a timely demand for jury trial and for such transfer. LOC.R.BANKR.P. (D.Minn.) 103(d). The Trustee does not dispute that Defendants' jury trial demand is timely under BANKR.R. 9015(b)(1). The sole question then is whether Defendants are entitled to a jury trial on the issues presented. If they are, Defendants' motion must be granted. If they are not, Defendants' motion must be denied and this Court will hear and determine this adversary proceeding.

■ Defendants must establish their right to jury trial under law. In the federal courts, a party's right to jury trial must derive from one of three sources: federal statute; state law, whether constitution or statute; or the Seventh Amendment to the United States Constitution. *In re Reda, Inc.,* 60 B.R. 178 (Bankr.N.D.Ill.1986); *In re Rodgers & Sons, Inc.,* 48 B.R. 683 (Bankr.E.D.Okla.1985).

■ There is no statutory authority, state or federal, establishing Defendants' right to jury trial in this adversary proceeding. Nowhere does the Bankruptcy Code explicitly grant defendants in a fraudulent conveyance action the right to jury trial. Too, review of the Minnesota enactment of the Uniform Fraudulent Conveyance Act reveals no provision establishing a right to jury trial. *See* MINN.STAT. §§ 513.20–.32. To be sure, MINN.R.CIV.P. 38.01 provides that "[i]n actions *for recovery ... of specific real or personal property,* the issues of fact shall be tried by a jury, unless a jury trial be waived or a reference be ordered ..." (emphasis added). At first glance this rule evidences a right to jury trial under Minnesota statute, given Plaintiff's prayer for relief. However, this conclusion should not be reached perfunctorily. In *Hibbs v. Marpe,* 84 Minn. 10, 86 N.W. 612 (1901), the Minnesota Supreme Court held that MINN.GEN.STAT. § 5360 (1894) (the statutory predecessor to MINN.R. CIV.P. 38.01, with virtually identical operative language) did not establish a right to jury trial for fact questions in an action in equity, historically tried to the court. *See also Rognrud v. Zubert,* 282 Minn. 430, 165 N.W.2d 244 (1969); *Olson v. Aretz,* 346 N.W.2d 178 (Minn.App.1984) (language of MINN.R.CIV.P. 38.01 and its statutory predecessors applies only to actions conceived of as "legal" such that a right to jury trial in them obtained when Minnesota Constitution was adopted—and not to actions then and now classified as "equitable."). Thus, MINN.R.CIV.P. 38.01 does not itself dispose of the issue at hand; the Court must look beyond, to the question of whether this proceeding is "legal" or "equitable" in nature.

The same basic question is relevant in the inquiry into Defendants' right to jury

---

**1.** The operative language here is of course originally from *Northern Pipeline Construction Co. v.* *Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982).

trial under the Seventh Amendment to the United States Constitution, and under MINN. CONST. art. 1, § 4.

■ The Seventh Amendment preserves the right of trial by jury "[i]n Suits at Common Law ..." The Seventh Amendment guarantee does not extend to actions lying in equity. *Katchen v. Landy*, 382 U.S. 323, 336–37, 86 S.Ct. 467, 476–77, 15 L.Ed.2d 391 (1966); *Barton v. Barbour*, 104 U.S. (14 Otto) 126, 133–34, 26 L.Ed. 672 (1881); *Carter v. Lechty*, 72 F.2d 320, 321 (8th Cir.1934). In determining whether a given proceeding in bankruptcy lies at common law or in equity for Seventh Amendment purposes, some courts have focused solely on the nature of the relief sought, in

the literal language of the prayer for relief. *See, e.g., In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 827 (S.D.N.Y.1985).[2]

■ The more appropriate analysis requires a thorough examination of the plaintiff's cause of action, as to the nature of the basic issues, the historical classification of the action and its predecessors, and the remedy invoked. *In re Graham*, 747 F.2d 1383, 1387 (11th Cir.1984); *In re Rodgers & Sons, Inc.*, 48 B.R. at 688–89.[3] Thus, where a proceeding has historically lay within equity jurisdiction and where the basic cause of action seeks the avoidance or reversal of transfers of property toward the equitable goal of restoring a pre-transfer status quo, the proceeding is appropriately classified as an equitable action to

2. Thus, these courts have characterized proceedings seeking restoration of the fraudulently-conveyed property itself as equitable in nature, and proceedings seeking entry of a money judgment in an amount corresponding to the value of the property as legal in nature. *In re O.P.M. Leasing Service, Inc.*, 48 B.R. at 827. Under this construct, a jury trial is available of right when the latter relief is sought, and is not when the former relief is sought. *Id.* This rationale leads to strained and indefensible results *where money was the property fraudulently transferred.* Where a transferee receives and commingles or dissipates fraudulently-conveyed funds—or, for that matter, the proceeds of fraudulently-conveyed tangible property—a judgment solely avoiding the transfer may well be unenforceable in a practical sense, rendering the judgment superfluous, and frustrating the equitable goals of the statute. In such a case, only entry of a money judgment—whether as the primary form of relief in a proceeding involving cash or funds, or as alternative relief in a proceeding involving tangible property—would afford meaningful recompense to the plaintiff. There is no rational difference between the two situations if one assumes that ultimate vindication of the plaintiff's rights is the significant consideration. An illusory distinction should not control the outcome of the issue of right to a jury trial. Several Courts have adopted a common-sense approach as an alternative, avoiding the irrelevant niceties of technical classifications. *See, e.g., In re Paula Saker & Co., Inc.*, 37 B.R. 802, 808 (Bankr.S.D.N.Y.1984); *In re Reda, Inc.*, 60 B.R. at 181 ("The Debtor is not really seeking damages for an injury. Instead the Debtor ... is seeking to recover a sum of money improperly paid to the creditor in Bankruptcy Code terms."); *In re Dunoco Corp.*, 56 B.R. 137, 139–41 (Bankr.C.D.Cal.1985). This Court chooses to join them.

3. In adopting this approach, this Court declines to follow those Courts which have analyzed the

right to jury trial under the post–1984 jurisdictional framework by inquiring whether the proceeding at hand is analogous to a "summary proceeding" or to a "plenary proceeding," both as envisioned under the Bankruptcy Act of 1898. *See, e.g., In re Hendon Pools of Mich. Inc.*, 57 B.R. 801 (E.D.Mich.1986); *In re McLouth Steel Corp.*, 55 B.R. 357 (E.D.Mich.1985); *In re Lee*, 50 B.R. 683 (Bankr.D.Md.1985); *In re Baldwin-United Corp.*, 48 B.R. 49 (Bankr.S.D.Ohio 1985). In their briefs, both parties to this adversary proceeding persisted in casting the issue at bar as "whether the court has summary or plenary jurisdiction." (Counsel for Defendants misread *Chrysler Credit Corp. v. Peterson*, 342 N.W.2d 170 (Minn.App.1984) as if its holding addressed jurisdictional issues under the Bankruptcy Act dichotomy, while a careful reading of that decision shows that in referring to "summary" and "plenary" the Minnesota Court of Appeals was describing *the mode of adjudication*—i.e., via motion on affidavit versus via full evidentiary hearing.) This Court joins those Courts that—while acknowledging the superficial similarity between the "summary"/"plenary" and "core"/"non-core" distinctions—reject analogies to such Bankruptcy Act constructs as wholly inappropriate and contrary to Congressional intent. *See, e.g., In re Wolf*, 68 B.R. 80 (Bankr.N.D.Tex.1986); *In re Energy Resources Co., Inc.*, 49 B.R. 278 (Bankr.D.Mass.1985). True, the ultra-simplified jurisdictional framework of the Bankruptcy Code of 1978 fell to constitutional attack in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra.* However, the jurisdictional framework re-constituted in the Bankruptcy Amendments and Federal Judgeship Act of 1984, while more involved than the original 1978 one, should not be interpreted in a fashion to resurrect the Byzantine complexity of jurisdiction under the Act.

which the Seventh Amendment preservation of right of jury trial does not apply. *In re Graham*, 747 F.2d at 1387–88; *In re Dunoco Corp.*, 56 B.R. at 139. Where the action is founded on state law, the court must refer to that state law to determine whether the proceeding is equitable in nature and whether it classically was addressed to a court of equity. *Whitlock v. Hause*, 694 F.2d 861, 866–67 (1st Cir.1982).

Similarly, the Minnesota Constitution provides that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy ..." MINN. CONST. art. 1, § 4. The Minnesota Supreme Court has held that the right to jury trial under this provision must be determined on the character of the issues to be tried. *Swanson v. Alworth*, 168 Minn. 84, 90, 209 N.W. 907 (1926). The term "cases at law" in the constitutional guarantee refers to actions at common law, as distinguished from causes in equity. *Id.; Breimhorst v. Beckman*, 227 Minn. 409, 433, 35 N.W.2d 719 (1949). *See also Georgopolis v. George*, 237 Minn. 176, 54 N.W.2d 137 (1952). Significantly,

> That the recovery of money only is sought does not give a right to a jury trial. The recovery of money alone may be sought in an equitable action.

*Swanson v. Alworth*, 168 Minn. at 90.

■ Under Minnesota law, an action to set aside a fraudulent conveyance has been classified as a proceeding in equity virtually since statehood. *Banning v. Armstrong*, 7 Minn. 24, 29 (1862). *See also Brill v. W.B. Foshay Co.*, 65 F.2d 420, 423 (8th Cir.1933), *cert. denied*, 290 U.S. 643, 54 S.Ct. 61, 78 L.Ed. 558 (1933). Under the current Minnesota fraudulent conveyance statute, a judgment creditor may elect the equitable remedy of avoidance of a fraudulent conveyance before invoking his legal remedy of execution on the fraudulently-conveyed property. D.C. Bridgeman, *Uniform Fraudulent Conveyance Act in Minnesota, Part II*, 7 MINN.L.REV. 530, 544–5 (1923).[4] Under the predecessor to the present Minnesota statute, there was no absolute right to a jury trial in a fraudulent conveyance action because of its equitable nature, though the state court had the discretionary power to submit specific fact questions to a jury. *Hibbs v. Marpe*, 84 Minn. at 11, 86 N.W. at 613.[5] Though the statute in effect when the Minnesota Supreme Court decided *Hibbs v. Marpe* was supplanted in 1921 by the Uniform Fraudulent Conveyance Act, the ruling in *Hibbs v. Marpe* is still viable. The UFCA broadened the availability of the avoidance remedy by adding alternate tests for fraud based on objective rather than subjective factors,[6] but it changed neither the basic nature of the action nor the form of the remedy.[7] The remedy is still directed toward the equitable goal of restoring a pre-

---

**4.** Obviously, resort to a fraudulent conveyance action before execution is the preferable sequence, as all questions of title to and interest in the subject property would be properly settled in the fraudulent conveyance action. *See, e.g., Lane v. Innes*, 43 Minn. 137, 45 N.W. 4 (1890). This would leave no ambiguities remaining for litigation by the less-appropriate method of proceedings to quash the execution. However, a judgment creditor may proceed in the reverse sequence. *See Chrysler Credit Corp. v. Peterson*, *supra* n. 3, and cases cited therein.

**5.** It should be noted that *Hibbs v. Marpe* was a fraudulent conveyance action brought by a trustee in bankruptcy.

**6.** For instance, the UFCA effectively abolished the pre-UFCA requirement of a showing of fraudulent intent on the transferor's part; now, transfers of property for inadequate consideration are deemed fraudulent upon a showing of

insolvency, unreasonably small business capital, or the incurring of debts without concomitant ability to pay them. *Compare* MINN.GEN. STAT. § 4222 (conveyance made with intent to hinder, delay, or defraud creditors was sole statutory ground for avoidance of fraudulent conveyances then obtaining) and § 4224 (1894) (fraudulent intent a question of fact; mere lack of valuable consideration is not a basis in itself for finding of fraudulent transfer) with MINN. STAT. §§ 513.23–.25.

**7.** In enacting the UFCA the Minnesota State Legislature generally intended to re-enact the Statute of 13 Eliz. c. 5 (1570), the original English statute embodying the fraudulent conveyance remedy; in fact, it preserved certain pre-UFCA substantive provisions of the old fraudulent conveyance statute by not making a comprehensive repeal of the old law. *See* D.C. Bridgeman, *Uniform Fraudulent Conveyance Act*

transfer status quo to maximize the satisfaction of creditors' claims, by avoiding transfers which otherwise on their face evidence a proper transfer of legal title and ownership. Though no Minnesota appellate decision since 1901 has stated that a jury trial is unavailable in a statutory fraudulent conveyance action, it is clear that *Hibbs v. Marpe* is still good law. Thus, under longstanding Minnesota state law, a fraudulent conveyance action is a cause in equity triable to the court without a jury. As such, Defendants are not afforded an absolute right to jury trial under the Seventh Amendment, the Minnesota Constitution or MINN.R.CIV.P. 38.01. At most, Defendants could have basic fact questions submitted to a jury, were the court, in its sole discretion, to elect to do so. This Court does not so elect. As this Court has determined that Defendants have not properly demanded a trial by jury, it cannot grant the relief requested in their motion.

WHEREFORE, IT IS HEREBY DETERMINED AND ORDERED:

1. That this adversary proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(H).

2. That Defendants are not entitled to trial by jury of the issues joined by Plaintiff's Complaint and Defendants' Answer.

3. That Defendants' motion for an order transferring this proceeding to U.S. District Court is denied.