In re Linda Jean MATHEWS, Debtor.

John A. HEDBACK, Trustee, Plaintiff,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant.

Bankruptcy No. 3–94–3419.
Adv. No. 3–95–049.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

March 29, 1996.

153

Brian F. Kidwell and Edward W. Gale, St. Paul, MN, for Plaintiff/Trustee.

Steven J. Kluz, Minneapolis, MN, for Defendant.

## ORDER RE: DEFENDANT'S MOTION FOR DETERMINATION OF RIGHT TO TRIAL BY JURY AND FOR TRANSFER OF ADVERSARY PROCEEDING TO UNITED STATES DISTRICT COURT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court for hearing on the Defendant's motion for determination of its right to trial by jury and for transfer of this adversary proceeding to the United States District Court for this District. The Defendant appeared by its attorney, Steven J. Kluz. The Plaintiff appeared by his attorneys, Brian F. Kidwell and Edward W. Gale. Upon the moving and responsive documents and the relevant files, records, and proceedings herein, the Court makes the following order.

### NATURE OF PROCEEDING

The Debtor filed a voluntary petition for relief under Chapter 7 on July 27, 1994. The Plaintiff is the trustee of her bankruptcy estate. The Defendant is a corporation duly licensed and authorized to do business as an insurance company in the State of Minnesota.

On March 29, 1995, the Plaintiff filed the complaint in this adversary proceeding. He bases his claims against the Defendant on the following allegations of fact, found in the complaint and in the record for this motion:

1. On June 20, 1991, in St. Paul Park, Minnesota, the Debtor was driving a vehicle owned by a third party with that party's authorization. She failed to see a stop sign that controlled her lane of traffic at an intersection, failed to stop at the intersection, and was involved in an accident with another vehicle. Brenda Ann Carlson ("Carlson") was the driver of the other vehicle. Thomas J. Thompson ("Thompson") was Carlson's passenger.[1]

2. In the complaint's words, "[a]s a result of the collision, both Thompson and Carlson suffered catastrophic injuries leaving them both permanently and totally disabled."

3. On the date of the accident, the vehicle the Debtor was driving was insured under an automobile liability policy issued by the Defendant. Under the policy, the Defendant extended coverage to the owner and all authorized drivers for liability in connection with any accident involving the vehicle, to a maximum of $50,000.00 per person and $100,000.00 per occurrence.

4. Pursuant to the policy, the Defendant undertook to defend the Debtor from all claims in connection with the accident.

5. On December 11, 1991, Thompson, through counsel, made a demand on the Debtor and the Defendant, to settle Thompson's claim by paying him the limits of coverage under the policy. Counsel noted that the offer was open for only 30 days.

6. On February 27, 1992, Carlson, through counsel, made a similar demand on the Debtor to settle for the limits of coverage under the policy. Again, counsel advised that the offer was open for only 30 days.

7. The Defendant did not respond to either demand within the time fixed by the respective injured parties' counsel.

8. On April 2, 1992, Thompson commenced a lawsuit against the Debtor in the Minnesota State District Court for the Second Judicial District, Ramsey County. The Defendant retained counsel for the Debtor. Counsel interposed an answer and commenced the defense.

9. Similarly, at some point in 1992 Carlson commenced a lawsuit against the Debtor in the same court. The Defendant again retained counsel for the Debtor, who undertook her defense.

---

1. When it is necessary to refer to them collectively, Carlson and Thompson will be called "the injured parties."

10. On June 30, 1993, the Defendant induced the Debtor to enter into a confidential agreement, under which the Debtor released the Defendant from all claims she had against it for its conduct in connection with its handling of the injured parties' claims and the defense thereof. In consideration for that release, the Defendant paid the Debtor the sum of $50,000.00 in cash.

11. Thompson's lawsuit proceeded to trial. On February 20, 1994, the Ramsey County District Court entered Findings of Fact, Conclusions of Law, and an Order for Judgment, holding the Debtor liable to Thompson for the sum of $7,004,743.00, plus prejudgment interest and costs and disbursements. The state court entered a corresponding judgment on June 14, 1994.

12. Carlson's lawsuit proceeded to trial. On June 20, 1994, the Ramsey County District Court entered Findings of Fact, Conclusions of Law, and an Order for Judgment, holding the Debtor liable to Carlson for the sum of $3,640,771.00, plus prejudgment interest and costs and disbursements. The state court entered a corresponding judgment on June 30, 1994.

13. The Defendant has paid Thompson and Carlson the sum of $50,000.00 each, the limits of coverage under the policy, in partial satisfaction of their judgments.

Asserting the status of successor to the Debtor as to all pre-petition causes of action against the Defendant, the Plaintiff sets out four separate "causes of action" in his complaint:

1. The Plaintiff states that the Defendant had an implied duty to exercise good faith and fair dealing with the Debtor in the handling and defense of the injured parties' claims. He asserts that, as a result of its breach of that duty, the Defendant is liable in damages to the bankruptcy estate, in the full amount of the unsatisfied judgments taken against the Debtor.

2. On the premise that the June 30, 1993 release was a transfer to the Defendant of the Debtor's rights of action for "bad faith" against it, the Plaintiff asserts that the Defendant induced and received that transfer with actual intent to hinder, delay, or defraud Thompson and Carlson. Thus, the Plaintiff asserts, the release is subject to avoidance at his instance as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and MINN.STAT. § 513.44(a)(1).

3. In the alternative, asserting that the Debtor had not received reasonably-equivalent value for the release of her "bad faith" claims against the Defendant, at a time when the Defendant knew or reasonably should have known that the Debtor would incur debts beyond her ability to pay, the Plaintiff asserts that the release is avoidable as a fraudulent transfer under MINN.STAT. § 513.44(a)(2).

4. In the alternative to his fraudulent-transfer counts, the Plaintiff requests a declaratory judgment that the release is void and unenforceable as against public policy.

## PROCEDURAL HISTORY

The Defendant first responded with a motion to dismiss the Plaintiff's first cause of action, his substantive claim for damages for "bad faith," for lack of ripeness. Some two weeks later, on April 28, 1995, before the hearing on its motion for dismissal, the Defendant interposed an answer. In that answer, the Defendant admitted

that this [was] a core proceeding under 28 U.S.C. § 157(b)(2)(H), however, [the Defendant] denie[d] that this court ha[d] jurisdiction over all causes of action alleged in the complaint . . .

After admitting certain averments in the complaint and denying the remainder, the Defendant raises four affirmative defenses:

1. The June 30, 1993 release is a binding and enforceable contract, precluding the Plaintiff and the bankruptcy estate from asserting their claims against the Defendant.

2. The court "lacks subject matter jurisdiction over" the Defendant as to his first cause of action "unless and until the Court determines that the Release is avoidable."

3. The Plaintiff's first cause of action fails to state a claim upon which relief could be granted.

4. Because the Minnesota Unfair Claims Practices Act, Minn.Stat. §§ 72A.17 *et seq.*, does not authorize a private cause of action, the Plaintiff's fourth cause of action fails to state a claim upon which relief could be granted.

The answer contains no reference to any right of the Defendant to a jury trial—neither an initial demand nor a statement of consent (or lack thereof) to a Bankruptcy Judge presiding over such a trial.

On May 5, 1995, the Court heard argument on the Defendant's motion for dismissal of the Plaintiff's first cause of action. The Court denied the motion from the bench, and entered an order on that ruling on May 8, 1995. On May 8, 1995, the Defendant's counsel served and filed a paper entitled "Demand for Jury Trial." In its entirety, it read:

> PLEASE TAKE NOTICE, that pursuant to Local Rule 203, [the Defendant] hereby demands a trial by jury of all issues raised in the above-captioned adversary proceeding.

Then, on May 16, 1995, the Defendant's counsel served and filed the present motion.

### MOTION AT BAR

The Defendant now moves for a determination that it has the right to trial by jury on all of the counts of the Plaintiff's complaint, and that it timely demanded that right. Because it does not consent to having a Bankruptcy Judge preside over such a trial, it requests that this adversary proceeding be transferred to the United States District Court for this District for such a trial.

In response, the Plaintiff maintains that the Defendant neither has the right to a jury trial, nor timely and properly preserved the right if it does have it.

### DISCUSSION

The parties' arguments raise three separate issues. There is no dispute over the facts, and all of the issues are amenable to decision based on the previous recitation of the legal and procedural posture of this adversary proceeding. The analysis produces a mixed bag of results. The discussion could proceed in several different ways; at least two of them could proceed in an order that would arguably make the discussion on most of the issues superfluous.

This adversary proceeding, however, involves a large amount in controversy. It presents a very live and close dispute over sensitive subject matter, and its outcome will be of great import, both to the parties and more generally. Jury trial demands in bankruptcy cases reflect a sharp tension between two opposing values of the federal court system. It is most appropriate, then, to treat the issues comprehensively. This requires the broadest issue—the one of constitutional dimension—to head the order of discussion.

### I. The Defendant's Right to Jury Trial

The first issue is whether the Defendant is entitled under law to the jury trial it has demanded. This inquiry requires one to identify the nature of the Plaintiff's causes of action and the form of relief he requests. The analysis begins with *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

In *Granfinanciera*, the Supreme Court addressed for the first time the question of whether a defendant in an adversary proceeding brought by a trustee in bankruptcy in a case under the Bankruptcy Code of 1978 had the right to have the action heard and decided by a jury, rather than by a bankruptcy judge sitting as the finder of fact. The trustee in *Granfinanciera* complained that the defendant had received a fraudulent conveyance of liquid funds from the debtor and, accordingly, prayed for a money judgment against the defendant. The defendant maintained that it had the right to trial by jury under the Seventh Amendment to the United

States Constitution.[2]

The majority in *Granfinanciera* commenced its discussion as follows:

> The form of our analysis is familiar. 'First, we compare the statutory action to eighteenth-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.' [citation omitted]. The second stage of this analysis is more important than the first.

492 U.S. at 42, 109 S.Ct. at 1290.

Much of the discussion in the majority opinion in *Granfinanciera* is specific to the arcana of the classification of fraudulent conveyance actions under early-modern English law.[3] Two rules of thumb emerge, however, one applicable to each of the two steps of the analysis.

■ First, if the plaintiff's theory of recovery sounds under the traditional common law, and was heard as such in the law courts of eighteenth-century England, its action is unquestionably a "Suit[ ] at common law," and the right to jury trial attaches. 492 U.S. at 43–47, 109 S.Ct. at 2790–2793.

■ The second rule has more application in cases where legal history does not allow the first step's classification as readily, or where the plaintiff's theory of recovery is based on law that was not extant in eighteenth-century England. It turns on the form and nature of the relief sought by the plaintiff. If, ultimately, the plaintiff prays for

> simply ... the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law.

492 U.S. at 46, n. 5, 109 S.Ct. at 2792, n. 5. (quoting from *Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891)). On the other hand, if the Plaintiff seeks a "traditional equitable remedy" like an accounting, or seeks injunctive relief that entails the exercise of judicial discretion in its crafting, to control the defendant's ongoing future conduct or otherwise, the action lies in equity and neither party has the right to a jury trial. 492 U.S. at 49, n. 7, 109 S.Ct. at 2794, n. 7.[4]

For the most part, counsel limited their argument on this issue to the two counts of the Plaintiff's complaint that sound under the fraudulent-transfer laws. A comprehensive discussion is warranted, however, because the four counts involve three very different theories of suit, and because the Defendant's motion purports to apply to all of them.

■ The Defendant unquestionably has the right to trial by jury on the Plaintiff's first count. Fundamentally, this is an action for breach of contract, as classical a civil common-law cause of action as exists. It does not matter that the alleged breach was of a covenant implied in law;[5] whether the

---

2. The relevant text of the Amendment, of course, is:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ...

3. And, much of the discussion is not as productive of certainty as the firmness of the majority's conclusion would suggest. *See* 492 U.S. at 84–86, 109 S.Ct. at 2813–2814 (White, J., dissenting).

4. The balance of the majority opinion in *Granfinanciera* treated the issue of whether Congress had the power to override a party's Seventh Amendment right by classifying a particular sort of action as a "core proceeding" subject to final adjudication by a Bankruptcy Judge, as it did in 28 U.S.C. § 157(b)(2)(H). The opinion held so resoundingly in the negative that this issue is settled once and for all.

5. For his theory of suit for his first count, the Plaintiff relies on *Short v. Dairyland Ins. Co.*, 334 N.W.2d 384 (Minn.1983) and its antecedents. In *Short*, the Minnesota Supreme Court adopted the reasoning of the trial court (Lebedoff, J.), which had brought together numerous prior decisions to make two central holdings:

> 1. A liability insurer has an inherent duty to exercise "good faith" as to its insured when it assumes control over settlement negotiations on claims; this duty "includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured." 334 N.W.2d at 387–388.
> 2. As a result, if an insurer assumes such control, it "may become liable in excess of its undertaking under the terms of the policy if it fails to exercise "good faith" in

covenant appeared on the face of the parties' written contract or not, it is deemed to have been part of their agreement under Minnesota state law, and the Defendant's alleged breach of it is actionable at law. Beyond this, of course, the Plaintiff seeks to recover money damages for the alleged breach. This is the signal legal remedy under our system. Though American law recognized the Plaintiff's theory of recovery only recently, the Defendant nonetheless has the right to a trial by jury on any fact disputes that pertain to this cause of action.

The Plaintiff's second and third counts sound under the Minnesota enactment of the Uniform Fraudulent Transfer Act ("UFTA"). They present a marginally closer case for the Plaintiff, on the law/equity dichotomy. Ultimately, however, these parts of his action lie at law as well.

The first stage of the *Granfinanciera* analysis has nothing to do with this issue, at least if it is limited to the subject matter of the transfer. Neither side has cited any authority on the narrow question of whether a creditor's complaint to avoid the transfer of a chose in action was legal or equitable in nature under traditional English law, and probably for good reason. The ancient common-law bar on champerty and maintenance would have made such transfers unenforceable, so it is unlikely that they would ever have been challenged by creditors under fraudulent-conveyance laws.

The second stage of the *Granfinanciera* analysis, then, is the one on which the issue

has to turn, and it does so in favor of the Defendant. The gist of these two counts is that the Debtor had an *asset*—a cause of action, a right of recovery—that she transferred in derogation of the rights of her creditors. The Trustee now seeks *to regain* that asset so that he may liquidate it for the benefit of those creditors. If this is not an action for the recovery of specific (if intangible) personal property, then nothing is. As such, it clearly falls within the broad ambit of actions for the recovery of assets, classified as legal under *Granfinanciera* and its predecessors. To the extent that there are contested issues of fact on these counts, then, the Defendant has the right to a jury trial on them.[6]

The final theory is that in the fourth count of the Plaintiff's complaint, brought in the alternative to the fraudulent-transfer counts, and, again, as a preliminary to his first request for relief. The Plaintiff seeks a determination as a matter of law that the Debtor's release of her "bad faith" claims against the Defendant was void, as contrary to public policy.

This is a request for a declaratory judgment. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, the right to trial by jury is preserved. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 504, 79 S.Ct. 948, 953, 3 L.Ed.2d 988 (1959). This does not mean that the right applies to all declaratory judgment actions, or to none of them. Rather, the entitlement to a jury trial is established by "what kind of suit the claim

considering offers to compromise the claim for an amount within the policy limits." 334 N.W.2d at 387.

**6.** Before *Granfinanciera,* the result would probably have been the opposite—at least in the opinion of the undersigned. *See In re Wencl,* 71 B.R. 879 (Bankr.D.Minn.1987). After the rather resounding pronouncements in *Granfinanciera,* however, the Plaintiff's reliance on *Wencl* is inapposite. This is not to say that the majority opinion in *Granfinanciera* is supported by an utter unanimity in history, precedent, or reasoning. 492 U.S. at 84–86, 109 S.Ct. at 2812–2814 (White, J., dissenting). However, it seems that under *Granfinanciera*'s analysis the essence of the characterization of an action, as between law and equity, is not on the superficial nature of the result; that is, the mere happenstance that judg-

ment in favor of the plaintiff will return a *status quo ante* in asset ownership will not immediately mark a proceeding as equitable in nature. Rather, it seems, the characterization largely turns on the *means* to that result. The *Granfinanciera* majority clearly puts conclusive weight on the fact that fraudulent-transfer laws bring about a court-ordered recovery of an asset, via the reversal of a single past act of transfer, enforced by a one-time return, physical or otherwise. Such relief does not affect *ongoing* future action on the part of a defendant, or require continuing jurisdiction over such conduct; nor does it require extended action on the part of the defendant, like the traditionally-equitable remedy of an accounting. The mere circumstance of a return to the status quo, then, does not make such a fraudulent-transfer action one for equitable relief.

would have come to court [in,] if there were no declaratory judgment remedy." *Owens–Illinois, Inc. v. Lake Shore Land Co., Inc.,* 610 F.2d 1185, 1189 (3d Cir.1979).

> If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit—an action brought by one who would have been a defendant at common law—then the parties have a right to a jury. But if the action is the counterpart of a suit in equity, there is no such right.

*Id. See also Terrell v. DeConna,* 877 F.2d 1267, 1273 (5th Cir.1989).

Were the declaratory-judgment remedy not available, the Plaintiff would have sought relief in rescission—voiding the release by setting aside the confidential agreement, on the grounds of public policy, illegality, or overreaching. Rescission has always been an equitable remedy sought to avoid the strict enforcement of legal rights under a contract. This makes the fourth count one that is equitable in nature for Seventh Amendment purposes.[7] The Defendant does not have the right to trial by jury on it.[8]

## II. SITUS OF JURY TRIAL

The next issue is where such a jury trial could be conducted.[9] The possible answers, of course, are the Bankruptcy Court, the United States District Court, or both.

Before the enactment of the Bankruptcy Reform Act of 1994, PUB.L. 103–394, the answer was quite simple. Under binding precedent from the Eighth Circuit, a bankruptcy judge lacked statutory authority to preside over a jury trial. *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d 1449, 1457 (8th Cir.1990). For any proceeding in which a party had a right to trial by jury, and had properly demanded one, transfer to the United States District Court for this District for such a trial would have been mandatory. Former LOC.R.BANKR.P. (D.MINN.) 204(a) (abrogated effective March 1, 1995).

In the 1994 Act, however, Congress authorized bankruptcy judges to preside over jury trials, with two pre-requisites—specific designation by their District Courts, and the express consent of all parties to the subject proceeding. 28 U.S.C. § 157(e), as enacted by PUB.L. 103–394, § 112. The former, something in the nature of a delegation of a specific power, was effected by our District Court's amendment of LOC.R.BANKR.P. (D.MINN.) 201, effective March 1, 1995.

To open its two-pronged effort to avoid a jury trial before this Court, the Defendant argues that 28 U.S.C. § 157(e) does not even apply to this adversary proceeding, because the underlying bankruptcy case was commenced before the effective date of the 1994 Act. The Plaintiff in turn maintains that the 1994 Act made its empowerment for all bankruptcy cases and proceedings, whether pending as of its effective date or yet to be commenced.

As both sides noted, there is almost no caselaw on the narrower issue at bar—whether 28 U.S.C. § 157(e) applies to a proceeding commenced after the date of its enactment, out of a bankruptcy case that was pending as of that date. The only case cited by either party is *In re Sacred Heart Hospital of Norristown,* 181 B.R. 195, 204 (Bankr.

---

**7.** This conclusion is further supported by a look at the Defendant's complementary remedy. Had the Plaintiff sued out his "bad faith" claim without also seeking to void the release, the Defendant's response would have been a request for specific performance of the confidential agreement. This, of course, is another contractual remedy that lies in equity.

**8.** The difference in result among the four counts does not ultimately affect the situs of the trial. Since the motion at bar was argued, the parties filed and argued cross-motions for summary judgment on the fourth count. They agree that there are no triable fact issues as to it. The

Seventh Amendment is only triggered when disputes of fact are present. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336, 99 S.Ct. 645, 654, 58 L.Ed.2d 552 (1979), *aff'g* 565 F.2d 815, 819 (2d Cir.1977); *Pernell v. Southall Realty,* 416 U.S. 363, 384, 94 S.Ct. 1723, 1734, 40 L.Ed.2d 198 (1974); *In re Peterson,* 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920); *In re Fulda Independent Co-op.,* 130 B.R. 967, 977–978 (Bankr.D.Minn.1991).

**9.** As will be seen, the source of the law on which this issue turns makes it the logical one to be addressed second.

E.D.Pa.1996), which has no utility as authority.[10]

The question, however, is readily answered by reference to the statute itself. Congress enacted 28 U.S.C. § 157(e) to resolve the issue of judicial authority and forum that the *Granfinanciera* Court did not pose and thus left unanswered, and as to which the Circuits subsequently split. H.R.REP. No. 835, 103d Cong. 1st Sess. 41–42 (1994). The general effective date for the Bankruptcy Reform Act of 1994 was the date of its enactment. PUB.L. No. 103–394, § 702(a). *See also* H.R.REP. No. 835, 103d Cong. 1st Sess. 59 (1994). That date was October 22, 1994, the date on which the President signed the Act.

Section 112 of the Act, which enacted 28 U.S.C. § 157(e), is not among the enumerated sections that § 702(b)(2) excepts from the general effective date. More specifically, § 702(b) of the Act provides:

> Except as provided in [§ 702(b) ](2), the amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of enactment of this Act.

Like any other parts of legislation, effective-date provisions are to be applied according to the standard canons of statutory interpretation. If clear and unequivocal on their face, they are to be applied strictly as they read. *In re Groth,* 69 B.R. 90, 91–92 (Bankr.D.Minn.1987).

The Debtor here filed her Chapter 7 petition almost three months before the enactment of 28 U.S.C. § 157(e). For this adversary proceeding, the legal regime · that fixes the incidents of the Defendant's right to a jury trial is that established by the judicial decisions and the Local Rules in effect before that enactment.[11] There is no statutory authority for a bankruptcy judge to preside

over a jury trial in any contested matter or adversary proceeding arising out of the Debtor's case, including this one. If the Defendant has properly demanded a jury trial under the applicable rules, then, it will have to be conducted in the District Court.

## III. SUFFICIENCY OF DEFENDANT'S DEMAND FOR JURY TRIAL

The final issue is whether the Defendant preserved its right to a jury trial by properly demanding one. The Plaintiff argues that the Defendant did not, because its demand did not comply with the requirement of current Local Rule 203(b), that the demand include a statement as to whether it consented to a trial before a bankruptcy judge.[12] Current Local Rule 203(e) provides that:

> [t]he failure of a party to serve a demand as required by this rule and to file it as required by Bankruptcy Rule 5005 constitutes a waiver of trial by jury.

The Plaintiff notes that caselaw from our District and Circuit Courts applies the comparable waiver provisions of FED.R.CIV.P. 38(d) to conclusive effect where parties file *late* demands for trial by jury. *Scharnhorst v. I.S.D. # 710,* 686 F.2d 637, 641 (8th Cir. 1982); *Williams v. Farmers and Merchants Ins. Co.,* 457 F.2d 37, 38 (8th Cir.1972); and *F.T.C. v. Kitco of Nevada, Inc.,* 612 F.Supp. 1280, 1281–1282 (D.Minn.1985) (Murphy, J.). He argues that any party making such a demand should be strictly held to the form and content requirements of this Court's Local Rules, with a similarly negative result for failure of compliance. As he notes, the Ninth Circuit, in *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 674–675 (9th Cir.1975), did just that, by affirming a District Court's denial of a demand for trial by jury for the

---

**10.** *Sacred Heart Hospital*'s reference to the possibility that 28 U.S.C. § 157(e) applies to proceedings commenced post-enactment out of cases begun pre-enactment is really only an aside, not a holding. It is also termed as an assumption, not as a reasoned conclusion. The remark is based on a citation to another decision by the same judge—and the earlier decision does not even address the issue for which it is cited.

**11.** The two other courts that have passed on the question in reported decisions have agreed. *In*

re *Schwinn Bicycle Co.,* 184 B.R. 945, 949, n. 1 (Bankr.N.D.Ill.1995); *In re Chadwick Bay Hotel Assoc.,* 178 B.R. 618, 622, n. 5 (Bankr.W.D.N.Y. 1995).

**12.** The specific language of the rule is:

> In the demand a party shall specify whether the party consents to the bankruptcy judge conducting the jury trial.

proponent's simple failure to position the demand in a specified place in its complaint.

There is much to be said for the Plaintiff's basic argument; the cited authority from the District of Minnesota and the Eighth Circuit supports a strict enforcement of the procedural requirements for jury trial demands, and *Rutledge* is strong persuasive authority for the vindication of local rules' pleading requirements for such demands.[13]

██ The problem, however, is that the provision in the Local Rules on which the Plaintiff relies to argue a fatal deficiency in the Defendant's jury trial demand cannot be applied to this adversary proceeding. As noted earlier, the statute creates the option of a jury trial in the Bankruptcy Court does not apply to this adversary proceeding. A local rule promulgated to administer that law, but only that law, cannot be applied either. This is particularly so where such an application would deprive the demandant of the benefit of a jury trial demand that in all other respects complied with the previously-applicable rule.[14] The Defendant cannot be penalized for failing to comply with a procedural and notice requirement under the local rules, where the selection of trial forum that that requirement is designed to implement is not available.[15] It has properly preserved and asserted its right to trial by jury.

## IV. TRANSFER OF PROCEEDING

The Defendant, then, is entitled to the transfer of this adversary proceeding to the District Court for the jury trial it has demanded, under the version of Loc. R.Bankr.P. (D.Minn.) 204(a) that is applicable to this adversary proceeding.[16] This, however, does not mean that the file must be transferred immediately. Discovery has only recently closed. The parties' cross-motions for summary judgment as to the Plaintiff's fourth claim for relief are under advisement. Regardless of the outcome of those motions, the parties may have other dispositive motions to make. This Court has full authority to hear all dispositive motions that do not entail triable fact questions, and to ensure that the proceeding is fully ready for trial if it is not fully adjudicated under such motions. *City Fire Equipment Co. v. Ansul Fire Protection*, 125 B.R. 645, 649–650 (N.D.Ala.1989) (*en banc*). *See also In re Kirk E. Douglas, Inc.*, 170 B.R. 169, 170 (D.Colo.1994); *In re M & L Business Mach. Co., Inc.*, 155 B.R. 531, 534 (D.Colo.1993); *Stein v. Miller*, 158 B.R. 876, 879–880 (S.D.Fla.1993); *In re Federated Dept. Stores, Inc.*, 144 B.R. 993, 997 (Bankr.S.D.Ohio 1992). This file will remain before the Bankruptcy Court to complete that process.

## ORDER

Upon the foregoing, then,

IT IS HEREBY DETERMINED AND ORDERED:

1. That the Defendant has the right to a trial by jury on the Plaintiff's first, second, and third causes of action.

---

**13.** Further, in *Drone v. Hutto*, 565 F.2d 543, 544 (8th Cir.1977), the court cited *Rutledge*, apparently with approval although it then distinguished it from the case before it on a difference in the language of the respective local rules.

**14.** Previously, the demanding party had only to make a demand in writing, former Loc. R.Bankr.P. (D.Minn.) 203(a), that specified the issues that the party wished to be tried to a jury, former Loc.R.Bankr.P. (D.Minn.) 203(b), and to serve the demand not later than ten days after the service of the last pleading directed to the issues in question. Former Loc.R.Bankr.P. (D.Minn.) 203(a). The Defendant's counsel met all of these requirements.

**15.** The Plaintiff's counsel argues at length that the order of the Defendant's motion for dismissal, its answer, and its jury trial demand reflect a conscious strategy: to preserve the Defendant's options while it weighed this Court's perceived receptivity to its theories of defense, and then to use the jury trial demand to effect a *de facto* recusal. This may well have been the case, but that is beside the point—given the gravity with which the Supreme Court treats the Seventh Amendment, the Defendant cannot be second-guessed on its jury trial demand as things stand here.

**16.** That version reads as follows:

On . . . motion of a party in interest, the bankruptcy judge shall transfer to the district court 1) any proceeding in which the court has determined that there is a right to trial by jury of the issues for which a jury trial has been timely demanded . . .

Former Loc.R.Bankr.P. (D.Minn.) 204(a) (amended effective March 1, 1995).

2. That, accordingly, after the presentation of all remaining dispositive motions, and decision on them, this adversary proceeding will be transferred to the United States District Court for this District for trial.